UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————— x

FORT WORTH EMPLOYEES'                    :    Civil Action No. 1:09-cv-03701-JPO-JCF
RETIREMENT FUND, On Behalf of Itself and :
All Others Similarly Situated,           :    CLASS ACTION
                                         :
                        Plaintiff,       :    PLAINTIFFS' MEMORANDUM OF LAW
                                         :    IN SUPPORT OF MOTION FOR CLASS
         vs.                             :    CERTIFICATION AND APPOINTMENT OF
                                         :    CLASS REPRESENTATIVES AND CLASS
J.P. MORGAN CHASE & CO., et al.,         :    COUNSEL
                                         :
                        Defendants.      :    [REDACTED VERSION]
                                         :
——————————————————— x

877588_1

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...................................................................................................1

II.  ARGUMENT .......................................................................................................3

  A.   This Case Meets the Requirements of Rule 23(a) .................................................4

      1.   The Class Is Numerous ...............................................................................4

      2.   There Are Questions of Law and Fact Common to the Class.....................5

      3.   Plaintiffs' Claims Are Typical of the Class ...............................................9

      4.   Plaintiffs Are Adequate..............................................................................14

  B.   The Requirements of Rule 23(b)(3) Are Satisfied ................................................17

      1.   Common Questions of Law and Fact Predominate ....................................17

      2.   A Class Action Is Superior ........................................................................23

III. CONCLUSION....................................................................................................25

877588_1

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997)................................................................................................17

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
  ___ U.S. ___, 133 S. Ct. 1184 (2013)...................................................................21

*Banyai v. Mazur*,
  205 F.R.D. 160 (S.D.N.Y. 2002) ...........................................................................4

*Bd. of Trs. of the AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*,
  269 F.R.D. 340 (S.D.N.Y. 2010) ..........................................................................24

*Berkley v. United States*,
  45 Fed. Cl. 224 (1999) ...........................................................................................24

*Herman & MacLean v. Huddleston*,
  459 U.S. 375 (1983)................................................................................................18

*In re Bear Stearns Mortg. Pass-Through Certificates Litig.*,
  851 F. Supp. 2d 746 (S.D.N.Y. 2012)....................................................................13

*In re Constar Int'l Inc. Sec. Litig.*,
  585 F.3d 774 (3d Cir. 2009)........................................................................4, 21, 22

*In re Dynex Capital Sec. Litig.*,
  No. 05 Civ. 1897 (HB), 2011 U.S. Dist. LEXIS 22484
  (S.D.N.Y. Mar. 7, 2011) ............................................................................*passim*

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
  No. 05 Civ. 10240 (CM), 2007 U.S. Dist. LEXIS 57918
  (S.D.N.Y. July 27, 2007) .......................................................................................24

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  574 F.3d 29 (2d Cir. 2009)...............................................................................10, 14

*In re IndyMac Mortg.-Backed Sec. Litig.*,
  286 F.R.D. 226 (S.D.N.Y. 2012) ................................................................*passim*

*In re Lehman Bros. Sec. & ERISA Litig.*,
  No. 09 MD 2017 (LAK), 2013 U.S. Dist. LEXIS 13999
  (S.D.N.Y. Jan. 23, 2013)........................................................................................22

877588_1

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
   No. 04 Civ. 8144 (CM), 2009 U.S. Dist. LEXIS 120953
   (S.D.N.Y. Dec. 23, 2009) ...............................................................................13

*In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*,
   No. 09 Civ. 2137 (LTS)(MHD), 2013 U.S. Dist. LEXIS 5285
   (S.D.N.Y. Jan. 11, 2013) ...............................................................................18

*In re Pfizer Sec. Litig.*,
   282 F.R.D. 38 (S.D.N.Y. 2012) .......................................................................6

*In re Vivendi Universal, S.A. Sec. Litig.*,
   242 F.R.D. 76 (S.D.N.Y. 2007) ..............................................................4, 9, 14

*In re Wells Fargo Mortg.-Backed Certificates Litig.*,
   No. 5:09-cv-01376-LHK, slip op. (N.D. Cal. Nov. 14, 2011)..............................3

*Korn v. Franchard Corp.*,
   456 F.2d 1206 (2d Cir. 1972)............................................................................6

*Kottler v. Deutsche Bank AG*,
   No. 05 Civ. 7773 (PAC), 2010 U.S. Dist. LEXIS 30590
   (S.D.N.Y. Mar. 29, 2010) ...............................................................................10

*Lapin v. Goldman Sachs & Co.*,
   254 F.R.D. 168 (S.D.N.Y. 2008) ....................................................................22

*Marisol A. by Forbes v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997)..............................................................................6

*Maywalt v. Parker & Parsley Petroleum Co.*,
   147 F.R.D. 51 (S.D.N.Y. 1993) ........................................................................4

*Menkes v. Stolt-Nielsen S.A.*,
   270 F.R.D. 80 (D. Conn. 2010).......................................................................21

*N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*,
   No. 08 Civ. 5653 (PAC), 2011 U.S. Dist. LEXIS 92597
   (S.D.N.Y. Aug. 16, 2011) ......................................................................3, 6, 18

*N.J. Carpenters Health Fund v. Residential Capital, LLC*,
   272 F.R.D. 160 (S.D.N.Y. 2011),
   *aff'd*, 477 F. App'x 809 (2d Cir. 2012)...........................................................14

*N.J. Carpenters Health Fund v. Residential Capital, LLC*,
   288 F.R.D. 290 (S.D.N.Y. 2013) .....................................................................5

Page

*N.J. Carpenters Health Fund v. Residential Capital, LLC,*
  No. 08 CV 8781 (HB), 2012 U.S. Dist. LEXIS 148865
  (S.D.N.Y. Oct. 15, 2012) ............................................................3, 5, 18, 22

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.,*
  693 F.3d 145 (2d Cir. 2012),
  *cert. denied,* ___ U.S. ___, 133 S. Ct. 1624 (2013)...................................... *passim*

*Pub. Emps. Ret. Sys. of Miss. v. Merrill Lynch & Co.,*
  277 F.R.D. 97 (S.D.N.Y. 2011) .................................................................. *passim*

*Ret. Sys. of Miss. v. Goldman Sachs Grp., Inc.,*
  280 F.R.D. 130 (S.D.N.Y. 2012) ................................................................ *passim*

*Robidoux v. Celani,*
  987 F.2d 931 (2d Cir. 1993)...........................................................................5, 10

*Rombach v. Chang,*
  355 F.3d 164 (2d Cir. 2004)..............................................................................21

*Seijas v. Republic of Arg.,*
  606 F.3d 53 (2d Cir. 2010)...........................................................................14, 22

*Tsereteli v. Residential,*
  283 F.R.D. 199 (S.D.N.Y. 2012) ................................................................ *passim*

*Wal-Mart Stores, Inc. v. Dukes,*
  ___ U.S. ___, 131 S. Ct. 2541 (2011) ..................................................................6

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
  §77k.........................................................................................................2, 4, 17, 25
  §77k(e).....................................................................................................................21
  §77l ...........................................................................................................................2
  §77l(a)(2).................................................................................................................17
  §77l(b).....................................................................................................................21
  §77o.....................................................................................................................2, 21

877588_1

Page

Federal Rules of Civil Procedure
    Rule 23 ............................................................................................... *passim*
    Rule 23(a)...............................................................................3, 4, 14, 25
    Rule 23(a)(2) .................................................................................................6
    Rule 23(a)(4) ...............................................................................................14
    Rule 23(b) ......................................................................................................3
    Rule 23(b)(3) ............................................................................17, 23, 25
    Rule 23(b)(3)(A)-(D) ...............................................................................24

## SECONDARY AUTHORITIES

17 J. William Hicks,
    *Civil Liabilities: Enforcement & Litigation Under the 1933 Act* (2013)
    §4:43 ...........................................................................................................18

## LEGISLATIVE HISTORY

H.R. Conf. Rep. No. 104-369 (1995)
    *reprinted in* 1995 U.S.C.C.A.N. 730 ....................................................17

877588_1

## I.    INTRODUCTION

Lead Plaintiffs Laborers Pension Trust Fund for Northern California ("Northern California Laborers") and Construction Laborers Pension Trust for Southern California ("Southern California Laborers") (collectively, "plaintiffs") respectfully request that the Court: (1) certify a Class of all persons or entities who acquired the Mortgage Pass-Through Certificates issued by defendant J.P. Morgan Acceptance Corporation I through any of the nine Trusts set forth in Exhibit A hereto;[1] (2) appoint plaintiffs as Class Representatives; and (3) appoint Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as Class Counsel.

Defendants in this securities class action offered and sold approximately $10 billion of Mortgage Pass-Through Certificates ("Certificates") to the Lead Plaintiffs and the proposed Class.[2] Each Certificate was secured by a pool of residential mortgage loans that defendants purchased from a core group of common loan originators.  Defendants sold the Certificates through the same registration statement and uniform prospectuses and prospectus supplements ("Offering Documents") that contained essentially identical misrepresentations about the quality of the loans

---

[1]    On April 2, 2013, the Court reinstated claims relating to ten of the Offerings based on the Second Circuit's decision in *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012), *cert. denied*, ___ U.S. ___, 133 S. Ct. 1624 (2013), including claims relating to JP Morgan Mortgage Trust 2007-A5 ("2007-A5") and JP Morgan Mortgage Trust 2007-A6 ("2007-A6").  *See* Dkt. No. 200.  Based on discovery obtained to date, it appears that only two investors invested in the 2007-A5 Offering during the proposed Class Period – Federal Home Loan Bank ("FHLB") of Pittsburgh and FHLB of Atlanta – and that only one investor invested in the 2007-A6 Offering during the proposed Class Period – FHLB of Atlanta.  Plaintiffs understand that both entities have filed lawsuits concerning their investments in these Offerings.  Accordingly, and in light of the information presently available to plaintiffs, plaintiffs do not currently intend to include the 2007-A5 or 2007-A6 Offerings in the proposed Class.

[2]    "Defendants" refers to (1) J.P. Morgan Securities, Inc., now known as J.P. Morgan Securities LLC ("JPMS"); (2) J.P. Morgan Acceptance Corporation I ("J.P. Morgan Acceptance") (collectively, "J.P. Morgan Defendants"); and (3) Brian Bernard, Louis Schoppio Jr., Christine E. Cole, David M. Duzyk, William King and Edwin F. McMichael (collectively, "Individual Defendants").  The J.P. Morgan Defendants, together with sponsor J.P. Morgan Mortgage Acquisition Corp. ("J.P. Morgan Acquisition"), are referred to collectively as "J.P. Morgan."

- 1 -

and the underwriting of those loans.  All of the Certificates were issued under the same Offering

Documents, and were created, offered, and sold by the same J.P. Morgan personnel and entities

using the same processes and procedures.

This case is perfectly suited for certification under Federal Rule of Civil Procedure 23 ("Rule

23") because all of Rule 23's requirements are met:

- *Numerosity* is established easily as there are at least 1,541 investors in the Class.[3]

- *Commonality* also is readily satisfied because (1) defendants used the same procedures, personnel and entities to bring the nine Offerings to market; (2) the Offerings were backed by loans originated by a core group of common lenders; and (3) the Offering Documents for each Offering contained essentially the same false representations about the underwriting and purchasing standards used to originate and acquire the underlying loans, the appraisal standards used to value the mortgaged properties, the resultant loan-to-value ratios ("LTVs") associated with the underlying mortgage loans, and the resultant ratings of the Certificates.  *See* ¶¶2-4, 67-77.[4] These similarities across the Offerings, along with the fact that damages can be calculated Class-wide using the prescribed statutory method, are issues of fact and law common to the Class.

- *Predominance* is met because plaintiffs will establish through common proof that defendants' systematic disregard of the underwriting standards, coupled with the flaws in J.P. Morgan's securitization process, infected all nine Offerings and led to the common misrepresentations and omissions contained in the Offering Documents that accompanied the sale of each Certificate.  *See, e.g., In re IndyMac Mortg.- Backed Sec. Litig.*, 286 F.R.D. 226 (S.D.N.Y. 2012) (granting class certification across ten offerings in a mortgage-backed securities ("MBS") class action); *Pub. Emps. Ret. Sys. of Miss. v. Merrill Lynch & Co.*, 277 F.R.D. 97 (S.D.N.Y. 2011) (granting class certification across 18 offerings).

- *Adequacy* and *typicality* are satisfied because (1) plaintiffs and the Class assert identical claims under §§11 and 15 of the Securities Act of 1933 ("Securities Act") arising from the same course of events; and (2) plaintiffs have no conflict with the Class, have been actively monitoring and supervising this action, and have retained

---

[3]   *See* Declaration of Daniel S. Drosman in Support of Plaintiffs' Motion for Class Certification and Appointment of Class Representatives and Class Counsel ("Drosman Decl."), Ex. 1, ¶99 (Expert Report of Joseph R. Mason, dated September 27, 2013 ("Mason Report")).

[4]   Unless otherwise noted, paragraph references ("¶_" or "¶¶_") are to the Second Amended Complaint for Violation of §§11, 12 and 15 of the Securities Act of 1933 ("SAC") (Dkt. No. 85); numbered exhibits ("Ex. __") are attached to the Drosman Decl.; and emphasis is added and citations are omitted throughout.

experienced counsel with proven track records in securities class actions like this one.

- And **superiority** is satisfied because a class action is superior to any other method for adjudicating this controversy as multiple lawsuits would be costly – in many cases cost-prohibitive – and inefficient, and no manageability issues arise from allowing this case to proceed in this forum.

Accordingly, the requirements of Rule 23 are satisfied. Plaintiffs request that the Court certify the following Class:

All persons or entities who, prior to March 12, 2009, purchased or otherwise acquired any Certificates in any of the Offerings set forth in Exhibit A and were damaged thereby.[5]

This case is the latest of six cases in this Circuit in which courts certified classes of MBS investors pursuing claims under the Securities Act.[6] Here, too, the requirements of Rule 23 are readily met.

## II.   ARGUMENT

Class certification is appropriate where plaintiffs satisfy the four elements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy. Fed. R. Civ. P. 23(a). An action must also meet the "predomina[nce]" and "superior[ity]" requirements of Rule 23(b).

"[T]he Second Circuit has directed district courts to apply Rule 23 according to a liberal rather than a restrictive interpretation . . . and has explicitly noted its preference for class certification

---

[5]   Excluded from the proposed Class are defendants, originators of any loans underlying the Certificates ("Originators"), their successors and assigns, and the directors and officers of such entities at all relevant times, as well as members of such persons' immediate families and their legal representatives, heirs, successors or assigns, and any entity in which any excluded party has or had a controlling interest.

[6]   *See Merrill Lynch*, 277 F.R.D. at 121; *N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*, No. 08 Civ. 5653 (PAC), 2011 U.S. Dist. LEXIS 92597 (S.D.N.Y. Aug. 16, 2011); *Tsereteli v. Residential*, 283 F.R.D. 199 (S.D.N.Y. 2012); *Pub. Emps.' Ret. Sys. of Miss. v. Goldman Sachs Grp., Inc.*, 280 F.R.D. 130 (S.D.N.Y. 2012); *IndyMac*, 286 F.R.D. 226; *N.J. Carpenters Health Fund v. Residential Capital, LLC*, No. 08 CV 8781 (HB), 2012 U.S. Dist. LEXIS 148865 (S.D.N.Y. Oct. 15, 2012) ("*RALI II*"); *see also In re Wells Fargo Mortg.-Backed Certificates Litig.*, No. 5:09-cv-01376-LHK, Final Judgment and Order of Dismissal With Prejudice (N.D. Cal. Nov. 14, 2011) (Dkt. No. 473) (certifying settlement class across 28 offerings) (Ex. 2).

in securities cases." *See Maywalt v. Parker & Parsley Petroleum Co.*, 147 F.R.D. 51, 54 (S.D.N.Y. 1993).   Courts in this District routinely certify class actions asserting claims under §11 of the Securities Act, and MBS class actions are no exception to this trend.   *See, e.g.*, *IndyMac*, 286 F.R.D. at 234 ("Previous instances of [§11] claims readily have been found to meet the requirements of commonality, typicality, and adequacy of representation."); *Goldman*, 280 F.R.D. 130; *Merrill Lynch*, 277 F.R.D. 97.   Section 11 claims are particularly well-suited for class certification.   The "formulaic nature of §11 leaves defendants with little room to maneuver" at the class certification stage.   *In re Constar Int'l Inc. Sec. Litig.*, 585 F.3d 774, 784-85 (3d Cir. 2009).

Here, plaintiffs have met their burden of establishing that this action should be certified as a class action.   Plaintiffs' evidence includes the accompanying Mason Report, public documents and testimony, the J.P. Morgan Defendants' discovery responses and testimony of their corporate representatives and employees in this case and in related ligation, documents produced by the J.P. Morgan Defendants and third parties in this case and in related litigations, and the supporting declaration of Lead Counsel.

## A.    This Case Meets the Requirements of Rule 23(a)

### 1.    The Class Is Numerous

Rule 23 permits class certification if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).   Numerosity exists where "the number of class members is sufficiently large so that joinder of all members would make litigation needlessly complicated and inefficient." *Banyai v. Mazur*, 205 F.R.D. 160, 163 (S.D.N.Y. 2002).   The precise quantification of class members is unnecessary "'because a court may make common sense assumptions regarding numerosity.'" *In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 83 (S.D.N.Y. 2007).

All courts to consider the issue have determined that numerosity is satisfied in MBS class

- 4 -

actions.  *See, e.g.*, *Goldman*, 280 F.R.D. at 134; *Merrill Lynch*, 277 F.R.D. at 104-05; *IndyMac*, 286 F.R.D. at 233; *In re Dynex Capital Sec. Litig.*, No. 05 Civ. 1897 (HB), 2011 U.S. Dist. LEXIS 22484, at *4-*5 (S.D.N.Y. Mar. 7, 2011).  Notably, an MBS class action is properly certified "even where certain sub-groups of that class do not meet the presumptive 40-member requirement."[7]

Here, using a conservative method of counting investors, the proposed Class contains **at least** 1,541 members.[8]  Further, investors in the Offerings are geographically dispersed institutions and individuals with a wide range in the size of transactions, from $10,000 to hundreds of millions of dollars.  *See* Mason Report, ¶101; *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993) ("[r]elevant considerations include judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members").  The joinder of these hundreds of investors would be impractical.  *See, e.g.*, *Merrill Lynch*, 277 F.R.D. at 105 (recognizing that joinder or individual adjudication of even 100 sophisticated investors' claims would be impractical).  Certification therefore promotes judicial economy and uniformity of decision regarding Class members' claims.

## 2.    There Are Questions of Law and Fact Common to the Class

Commonality requires plaintiffs to show that "there are questions of law or fact common to

---

[7]    *IndyMac*, 286 F.R.D. at 232 (finding numerosity where 2 of 10 offerings had fewer than 40 purchasers); *see also Merrill Lynch*, 277 F.R.D. at 104-05 (finding numerosity where 1 of 18 offerings had fewer than 40); *RALI II*, 2012 U.S. Dist. LEXIS 148865, at *13 n.1 ("I disagree with RALI Defendants, who argue that numerosity can no longer be established with respect to RALI 2007-QH4 subclass which has only 22 putative members.  The courts in this district have concluded that a class may be certified even if certain sub-classes do not meet the presumptive 40-member requirement."); *N.J. Carpenters Health Fund v. Residential Capital, LLC*, 288 F.R.D. 290, 296 (S.D.N.Y. 2013) (same); *Tsereteli*, 283 F.R.D. at 206.

[8]    *See* Mason Report, ¶¶99-100.  Discovery continues from large institutional clearing firms and may significantly increase the numbers of unique investors. *Id*., ¶99. To date, BNY has produced information showing 181 unique investors in certain of the Offerings, but has refused to produce information regarding investor identity that would allow plaintiffs to ensure that those investors are not being double-counted.  Plaintiffs discussed BNY's objection and the substantial number of investors in the Offerings with defendants, but defendants refused to stipulate to numerosity or agree to count BNY investors as unique investors for numerosity purposes.  The 1,541 investor count includes 181 investors from BNY's records whose identities were not disclosed.  *See id*.

- 5 -

the class." Fed. R. Civ. P. 23(a)(2).  Courts liberally construe this requirement, which demands only

that plaintiffs' and class members' claims "share a common question of law or of fact."  *Marisol A.*

*by Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997); *see also Wal-Mart Stores, Inc. v. Dukes*,

___ U.S. ___, 131 S. Ct. 2541, 2556 (2011) ("'Even a single [common] question' will do . . . .").

This standard "does not 'mandate that all class members make identical claims and arguments.'"

*Tsereteli*, 283 F.R.D. at 206.  Rather, the commonality requirement is satisfied "'where putative

class members have been injured by similar material misrepresentations and omissions.'" *Goldman*,

280 F.R.D. at 134.

        In the Second Circuit, commonality is "plainly satisfied [where] the alleged

misrepresentations in the prospectus relate to all the investors, [because] the existence and

materiality of such misrepresentations obviously present important common issues."  *Korn v.*

*Franchard Corp.*, 456 F.2d 1206, 1210 (2d Cir. 1972); *see also In re Pfizer Sec. Litig.*, 282 F.R.D.

38, 44 (S.D.N.Y. 2012).  Commonality is satisfied where, as here, "[t]he members of the proposed

class were all allegedly damaged by the same alleged misstatements and omissions in the Offering

Documents, which related to the Certificates that all of the members of the proposed class

purchased."  *DLJ*, 2011 U.S. Dist. LEXIS 92597, at *7; *see also Dynex*, 2011 U.S. Dist. LEXIS

22484, at *6 (finding commonality for mortgage-backed bonds collateralized by impaired

mortgages, because class members "are alleged to have been impacted by the ***same***

misrepresentations and omissions") (emphasis in original).  Both the "'existence and materiality of

such misrepresentations obviously present important common issues.'" *Tsereteli*, 283 F.R.D. at 206.

        Here, the Offering Documents uniformly misrepresented the underwriting standards of the

loans acquired by J.P. Morgan for all nine Offerings.  *See* ¶¶3-5.  All of the Offering Documents

represented that J.P. Morgan purchased loans pursuant to standards that were specifically calculated

- 6 -

to evaluate each borrower's credit standing and ability to repay their loan.  *See* ¶¶67-69; Mason Report, ¶42.  For example, ***all*** of the Offering Documents represented that "[u]nderwriting standards [were] applied by or on behalf of a lender to evaluate a borrower's credit standing and repayment ability" to all of the loans underlying the Offerings and that even with respect to "alternative" sets of underwriting criteria relating to reduced or limited documentation loan programs, the underwriting focused on a demonstration of "an established ability and willingness to repay the mortgage loans in a timely fashion."  *See* ¶¶67-69.

These statements were uniformly false because neither J.P. Morgan nor the Originators of the loans determined whether borrowers could afford to repay their loans.  *See id*.  Instead, J.P. Morgan routinely purchased loans that were made regardless of the borrower's ability to repay, and borrowers frequently were approved for loans that they could not possibly repay.  *See* ¶¶63-64.  All of the Offerings contained loans for which the Originator had failed to determine that the borrowers had sufficient monthly income to make the required monthly payments.  *See* ¶¶63-64, 77-82, 89-94. Furthermore, the Offering Documents omitted the fact that: (1) many Originators had aggressively implemented policies designed to extend mortgages to unworthy borrowers; and (2) many of the loans purchased by J.P. Morgan were extended to borrowers who had wrongly altered or failed to submit the required documentation with their loan applications.  *See* ¶¶63-66.

The Offering Documents also included similar misstatements about the lending practices of particular Originators that were large sellers of loans to J.P. Morgan and the Trusts.  *See* ¶¶69-96. For example, the Offering Documents contained practically identical misstatements about the underwriting standards employed by certain loan Originators, including J.P. Morgan Chase Bank, National Association or its affiliates ("Chase") and American Home Mortgage Corp. ("AHM").  *See id*.; Mason Report, ¶¶42, 75; Table 2.

- 7 -

The Offering Documents contained additional, uniform misrepresentations regarding the appraisals of the properties securing the loans underlying the Offerings. *See* ¶¶97-112. Specifically, *all* of the prospectus supplements stated that the appraisals were conducted by qualified or independent appraisers. *See, e.g.*, Exs. 3-4. Furthermore, substantially all of the prospectus supplements stated:

> The adequacy of the mortgaged property as security for repayment of the related mortgage loan will generally have been determined by an appraisal in accordance with pre-established appraisal procedure guidelines for appraisals established by or acceptable to the originator. ***All appraisals conform to the Uniform Standards of Professional Appraisal Practice*** [("USPAP")] . . . . The appraisal procedure guidelines generally will have required the appraiser or an agent on its behalf to personally inspect the property and to verify whether the property was in good condition and that construction, if new, had been substantially completed. ***The appraisal generally will have been based upon a market data analysis of recent sales of comparable properties*** and, when deemed applicable, an analysis based on income generated from the property or a replacement cost analysis based on the current cost of constructing or purchasing a similar property.

*See* ¶¶97-99. These uniform representations were false and misleading because they failed to disclose that appraisals of properties underlying the loans in the Offerings were inflated, inaccurate and did not conform to USPAP. *See* ¶¶97-112. As a result, all of the Offering Documents similarly misstated the reported LTVs, and the credit ratings were false and misleading, which masked the Certificates' true risk profile and damaged the Class. *See* ¶¶5-8, 113-116, 122-123; Mason Report, ¶¶84, 89.

Accordingly, plaintiffs' and proposed Class members' claims arise out of similar misstatements and omissions, raising a host of common questions, such as:

1. Whether defendants violated the Securities Act by the acts and conduct alleged in the SAC;

2. Whether defendants misstated or omitted material information regarding the Originators' underwriting standards in the Offering Documents;

- 8 -

3.      Whether defendants misstated or omitted material information regarding the appraisal standards and LTVs for loans purchased by J.P. Morgan in the Offering Documents;

4.      Whether the credit ratings of the Certificates in the Offering Documents were false and misleading;

5.      Whether the Individual Defendants participated in the course of conduct alleged in the SAC;

6.      Whether the Individual Defendants were control persons of the depositor;

7.      Whether plaintiffs' and Class members' claims are subject to common affirmative defenses; and

8.      Whether the Class sustained damages and the appropriate measure thereof.

These questions are illustrative rather than exhaustive, but establish the commonality required by Rule 23.  This was acknowledged by the Court when it amended its earlier ruling, finding that plaintiffs do have standing to assert claims for all Offerings on the Second Circuit's holding in *Goldman*, 693 F.3d 145.  In its Order, the Court found that a "plaintiff has class standing to assert the claims of purchasers of certificates backed by mortgages originated by the same lenders that originated the mortgages backing plaintiff's certificates, because such claims implicate '***the same set of concerns***' as plaintiff's claims."  *Id.* at 148-49; *see* Dkt. No. 197.  Thus, "[t]he common questions presented by this case – essentially, whether the Offering Documents were false or misleading in one or more respects – are clearly susceptible to common answers."  *Merrill Lynch*, 277 F.R.D. at 106.  This is especially true given that all of the Offerings at issue emanate from the same investment bank and were structured, offered, and sold by the same entities and personnel.  *Id.*

### 3.      Plaintiffs' Claims Are Typical of the Class

"'While the commonality inquiry establishes the existence of a certifiable class, the typicality inquiry focuses on whether the claims of the putative class representatives are typical of the class sharing common questions.'"  *Vivendi*, 242 F.R.D. at 84-85.  To establish typicality, plaintiffs must

- 9 -

show that "'each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'" *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009).  The typicality requirement is not demanding and the focus "is not on the plaintiff['s] behavior, but rather on the defendant[s'] actions."  *Kottler v. Deutsche Bank AG*, No. 05 Civ. 7773 (PAC), 2010 U.S. Dist. LEXIS 30590, at *6 (S.D.N.Y. Mar. 29, 2010).  "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims."  *Robidoux*, 987 F.2d at 936-37.

Here, typicality is established because plaintiffs and Class members assert identical legal theories arising from the same course of conduct by defendants: namely, defendants' systematic acquisition and securitization of shoddy loans and the Offering Documents' misstatements about the resultant Certificates.  *See IndyMac*, 286 F.R.D. at 235 ("'[A] common course of conduct and a unitary legal theory for the entire class period' is alleged, namely that the Offering Documents contain materially misleading statements or omissions, and commonality, typicality, and adequacy of representation are satisfied."); *Dynex*, 2011 U.S. Dist. LEXIS 22484, at *8-*9 (finding claims to be typical because legal theories and proof would be the same for claims alleging violations of underwriting and origination guidelines in the offerings).

The nature of MBS generally and the Offerings specifically is that each Certificate within an Offering represents a claim on cash flows from the underlying loans.  *See* Mason Report, ¶82.  Thus, cash flows to all Certificates in each Offering are based on the performance of those underlying loans.  *See id.*, ¶85.  Therefore, to the extent that there are false statements or materially misleading omissions in the Offering Documents concerning the loans, all Certificates in each of the Offerings

- 10 -

will be similarly and adversely affected.  *See id.*; *Merrill Lynch*, 277 F.R.D. at 101 (holding that an MBS class action "depends, more than anything else, on establishing that certain statements and omissions common to all the offerings were material misrepresentations").

Each plaintiff's claim is typical for purchasers in all Offerings. ███████████

███████████████████████████████████████████████████

███████████████████████████████  *See* ¶¶17-25, 148-149; Ex. 5 at JPMC_DEX_002919690, 713-14; Ex. 6 at 35:11-37:1, 53:21-54:25, 138:25-139:22, 152:1-153:12. Additionally, the Offerings contain loans from many of the same Originators.  Indeed, ***all*** of the nine Offerings contained loans originated by Chase.  *See* Table 1.  ***All*** of the non-Chase-only Offerings (six out of nine Offerings) also contained loans originated by nine common Originators, which collectively accounted for more than ***84.5%*** of the total loans underlying the Offerings.  *See id*.  The Originators in the Offering purchased by the plaintiffs originated ***93.7%*** of the total loans across all of the Offerings.  *See* Chart 1.  All of the Offering Documents contained substantially similar untrue representations and omissions concerning underwriting and appraisal, which resulted in similar undisclosed operational risks affecting all the Offerings.  *See generally* Mason Report, ¶¶86-89.  As all Class members' claims arise from "'the same course of events'" and each Class member will make "'similar legal arguments to prove the defendant[s'] liability,'" typicality here, as with six prior MBS class actions, is readily established.[9]

Systemic failure at various stages of the securitization process caused the alleged material misrepresentations in the Offering Documents.  Plaintiffs' claims, accordingly, arise from the same course of events. ██████████████████████████████████████

████████████████████████████████████

---

[9]   *See, e.g.*, *Merrill Lynch*, 277 F.R.D. at 106; *Goldman*, 280 F.R.D. at 135; *IndyMac*, 286 F.R.D. at 235; *see also Dynex*, 2011 U.S. Dist. LEXIS 22484.

- 11 -

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████.

The evidence demonstrates the consistent and pervasive problems of the Originators' non-conformance to their own underwriting and appraisal standards.  Consequently, the false and

misleading statements about the Originators' compliance with standards, which were included in **all** of the Offering Documents, artificially and substantially overstated the credit quality of the Certificates' underlying loans, and hence inflated the value of the Certificates, in a uniform manner. ¶¶3-5; Mason Report, ¶89.

Moreover, according to the rating agencies, the credit support levels required for the Offerings were highly sensitive to loan attributes and data such as borrower FICO scores, LTV and DTI ratios, and appraisal accuracy. *See* Ex. 9 at 11. For example, a five point increase in the LTV ratio could increase the required Aaa credit support level by as much as 35%. *See id.* Because defendants ignored the pervasive LTV and DTI exceptions and unsupported appraisal values identified during the loan due diligence process, and consequently provided flawed information and data to the rating agencies, the ratings assigned to the Certificates did not accurately reflect their risks. *See* ¶¶122-123; Mason Report, ¶¶84-85; Ex. 7 at JPMS-FW-00032604, 648-70. As a result, the ratings in **all** of the Offering Documents were false and misleading, and the value of the Certificates was artificially inflated in a uniform manner.

Any "'minor variations'" in the claims do not defeat typicality. *Merrill Lynch*, 277 F.R.D. at 106. The fact that plaintiffs and the Class have purchased different tranches is immaterial. *See In re Bear Stearns Mortg. Pass-Through Certificates Litig.*, 851 F. Supp. 2d 746, 778 (S.D.N.Y. 2012). Nor do "[f]actual differences involving the date of acquisition, type of securities purchased and manner by which the investor acquired the securities . . . destroy typicality if each class member was the victim of the same material misstatements and the same fraudulent course of conduct." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 U.S. Dist. LEXIS 120953, at *32 (S.D.N.Y. Dec. 23, 2009). Any differences in damages between plaintiffs and the Class also do not defeat typicality: the fact that "damages may have to be ascertained on an individual basis is

- 13 -

not sufficient to defeat class certification." *Seijas v. Republic of Arg.*, 606 F.3d 53, 58 (2d Cir. 2010); *Goldman*, 280 F.R.D. at 135-36; *N.J. Carpenters Health Fund v. Residential Capital, LLC*, 272 F.R.D. 160, 167 (S.D.N.Y. 2011) ("*RALI I*"), *aff'd*, 477 F. App'x 809 (2d Cir. 2012).  Here, damages will be calculated pursuant to a statutory formula that is applicable to all investors. *IndyMac*, 286 F.R.D. at 235 n.69; Mason Report, ¶¶102-106.

The Second Circuit's recent *Goldman* decision supports typicality here.  In *Goldman*, the court explained that MBS purchasers have class standing for additional offerings that are "backed by mortgages originated by the same lenders that originated the mortgages backing plaintiff's certificates" because similar originators implicate "'the same set of concerns.'" 693 F.3d at 148-49. Here, plaintiffs have class standing to pursue the Offerings because each contains loans originated by one or more of the Originators.  *See* Table 1; Chart 1.  For distinct, but logically consistent reasons, plaintiffs' claims are typical of those investors in all Offerings.  Similar Originators, coupled with identical conduct by defendants across the Offerings, will require plaintiffs and the Class to prove defendants' liability using "'the same course of events'" and "'similar legal arguments.'" *Flag*, 574 F.3d at 35.

### 4.   Plaintiffs Are Adequate

Rule 23(a) requires plaintiffs to establish that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  "Adequacy 'entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'" *Flag*, 574 F.3d at 35.  Adequacy is satisfied if "the proposed class representatives have no 'interests [that] are antagonistic to the interest of the other members of the class.'" *Vivendi*, 242 F.R.D. at 85.  "[T]o defeat a motion for [class] certification, [a conflict of interest] 'must be fundamental.'" *Flag*, 574

F.3d at 35.

No fundamental conflict exists here.  Indeed, plaintiffs' interests are directly aligned with the interests of Class members, as they all purchased Certificates pursuant to the same Registration Statement and have a common goal of proving the same false and misleading statements and omissions in the Offering Documents.  *See IndyMac*, 286 F.R.D. at 235 ("The commonality, typicality, and adequacy requirements may be met in a securities class action based on something as simple as a commonly alleged 'disregard of underwriting guidelines.'").  As with typicality, the existence of multiple securities within and across offerings is irrelevant to adequacy because plaintiffs "still [have] the incentive to negotiate a settlement for the highest amount of damages possible and any perverse incentives that may arise given the waterfall structure of the tranches are merely speculative at this stage." *Goldman*, 280 F.R.D. at 136; *see Dynex*, 2011 U.S. Dist. LEXIS 22484, at *7 ("While investors' repayment rights may vary slightly based on the seniority of the tranches they purchased, this does not present a 'fundamental' conflict within the class.").

Each proposed representative is unquestionably adequate.  Each of the named plaintiffs already has demonstrated their commitment to monitor and supervise the prosecution of this action on behalf of the Class.  For example, plaintiffs have received and reviewed periodic updates and other documents concerning the litigation, and have reviewed pleadings and consulted with their counsel regarding significant developments.  Plaintiffs also have responded to interrogatories, collected and begun producing documents, and will appear at depositions, which defendants have noticed.

**Laborers Pension Trust Fund for Northern California**

- Lead Plaintiff Northern California Laborers is a trust fund created by a trust agreement between the Northern and Central California Chapter of Associated General Contractors of California, Inc. and the Northern California District Council of Laborers ("District Council").  Northern California Laborers administers the contributions required by the

provisions of collective bargaining agreements between the District Council or any of its affiliated Local Unions and employers obligated by collective bargaining agreements to make contributions to the trust fund.  Northern California Laborers provides retirement and other benefits to approximately 10,000 retirees and beneficiaries.  Northern California Laborers purchased more than $13 million worth of the J.P. Morgan Mortgage Trust 2007-S3 Certificates (the "2007-S3 Certificates") issued pursuant and/or traceable to the false and misleading Offering Documents, at a par value of over 99%.  *See* Dkt. No. 173-1.  Northern California Laborers sold all of those Certificates in February 2012 at a price of approximately 81%.  *Id.*  As Northern California Laborers stated under penalty of perjury in its Certification, Northern California Laborers understands the duties and responsibilities of acting as a Class Representative in this action and is willing to fulfill those duties and responsibilities.  *Id.*  Northern California Laborers has served as Lead Plaintiff in other securities class actions.[10]

**Construction Laborers Pension Trust for Southern California**

• Lead Plaintiff Southern California Laborers is a Trust, administered by a board of trustees, established to oversee the pension benefits for approximately 30,000 retirees and beneficiaries in the construction industry.  Southern California Laborers purchased more than $10 million worth of 2007-S3 Certificates pursuant and or traceable to the false and misleading Offering Documents, at a par value of 95.3750.  *See* Dkt. No. 173-1.  Southern California Laborers sold all of those Certificates in September 2009 and February 2012 at a price of approximately 81%.  *Id.*  As Southern California Laborers stated under penalty of perjury in its Certification, Southern California Laborers understands the duties and responsibilities of acting as a Class Representative in this action and is willing to fulfill those duties and responsibilities.  *Id.*

Northern California Laborers and Southern California Laborers have decades of experience working together cooperatively.  For example, the two entities have entered into agreements that provide for the coordination of calculating and payment of benefits on behalf of participants by and between the plans, and they also share common contributing employers and a joint sponsor.  *See* Dkt. No. 173-2, ¶4.  Fund representatives also conferred with one another prior to filing the joint motion for appointment as lead plaintiff, and are actively coordinating their joint prosecution of this action.  *See id.*, ¶¶6-7.  The Trustees of both funds also have prior experience serving as fiduciaries and selecting, hiring and overseeing lawyers.  *See id.*, ¶8.

---

[10]  *See Lowrey v. Toll Bros., Inc.*, No. 2:07-cv-01513-CDJ (E.D. Pa.); *Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*, No. 8:06-cv-01716-SDM-EAJ (M.D. Fla.).

Plaintiffs also are the very type of institutional investors that Congress sought to lead securities litigation when it passed the Private Securities Litigation Reform Act of 1995 ("PSLRA"). Congress enacted the PSLRA in large part to encourage institutional investors like plaintiffs to take control of securities class actions by "participat[ing] in the litigation and exercis[ing] control over the selection and actions of plaintiffs' counsel."  H.R. Conf. Rep. No. 104-369, at 32 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 731.[11]

In addition, plaintiffs' counsel are qualified and capable of prosecuting this action, having prosecuted securities class actions – including MBS cases – for many years with proven track records of success. *See* Ex. 10.

## B.    The Requirements of Rule 23(b)(3) Are Satisfied

### 1.    Common Questions of Law and Fact Predominate

Under Rule 23(b)(3), predominance exists where the proposed class is "'sufficiently cohesive to warrant adjudication by representation.'" *Goldman*, 280 F.R.D. at 136 (quoting *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997)).  This standard "'does not require a plaintiff to show that there are no individual issues.'" *IndyMac*, 286 F.R.D. at 236.  Rather, where, as here, "issues of liability are 'common to the class, common questions are held to predominate over individual questions.'" *Id.*; *see also Tsereteli*, 283 F.R.D. at 210.

To establish liability, plaintiffs must prove ***only*** that defendants made materially false or misleading statements of fact in the Offering Documents.  15 U.S.C. §§77k, 77l(a)(2).  Because these claims focus on the contents of the Offering Documents – ***with no requirement to show reliance, knowledge or causation*** – they are particularly well-suited for class treatment.  *See*

---

[11]    In the event the Court declines to appoint one of the proposed Class Representatives, the other is individually amply qualified to represent the Class for the nine Offerings. *Cf. Goldman*, 280 F.R.D. 130.

*Goldman*, 280 F.R.D. at 136 (citing *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382 (1983),

and noting the limited showing needed to establish a *prima facie* case under §§11 and 12).  Courts

and commentators alike have recognized that, for Securities Act claims like those asserted here, "a

court can usually find that common factual and legal issues will predominate."  17 J. William Hicks,

*Civil Liabilities: Enforcement & Litigation Under the 1933 Act* §4:43 (2013) (citing cases).

 Where the plaintiffs' *prima facie* case may be established through common proof of the

defendant's liability, predominance will be found.[12]  As Judge Rakoff explained in *Merrill Lynch*:

> While an analysis of the alleged falsity of the statements in the Offering Documents
> will of course entail some individualized inquiry, the common issues here overwhelm
> the individual ones.  To begin with . . . "[e]ach of the Certificates purchased by the
> Plaintiffs and the Class were created and issued pursuant to [the] same process by the
> same Defendants." . . . ***The alleged flaws common to that process, which resulted***
> ***in the misstatements, will be the subject of common proof***.

277 F.R.D. at 113.

 The same is true here.  The predominant common question in this action is whether the

Offering Documents contained misstatements about the Originators' underwriting and appraisal

practices and false and misleading credit ratings.  ¶¶67-123.  The proof on these issues will be the

same for plaintiffs as it is for other Class members.  *See Goldman*, 693 F.3d at 163 (recognizing that

class-wide evidence will be offered to prove that a given entity abandoned its stated underwriting

guidelines).  The J.P. Morgan Defendants' alleged misrepresentations concerning the mortgage loan

underwriting guidelines in each of the nine Offerings "'implicates the same set of concerns at the

conduct alleged to have caused injury to other members of the putative class.'"  *See In re Morgan*

---

[12] *See IndyMac*, 286 F.R.D. at 236, 240-42 (certifying class of MBS investors after finding predominance test satisfied); *Tsereteli*, 283 F.R.D. 199 (same); *Goldman*, 280 F.R.D. 130 (same); *Merrill Lynch*, 277 F.R.D. 97 (same); *DLJ*, 2011 U.S. Dist. LEXIS 92597 (same); *see also RALI II*, 2012 U.S. Dist. LEXIS 148865, at *15, *19 (certifying MBS classes in two cases on an "expanded record" after initially denying certification, and citing "other district courts [that] have granted certification in similar MBS cases").

*Stanley Mortg. Pass-Through Certificates Litig.*, No. 09 Civ. 2137 (LTS)(MHD), 2013 U.S. Dist. LEXIS 5285, at *11-*12 (S.D.N.Y. Jan. 11, 2013) (quoting *Goldman*, 693 F.3d at 162).

J.P. Morgan used the same process and personnel for mortgage loan acquisition and securitization across the Offerings pursuant to the same false statements and omissions concerning conformance to underwriting and appraisal guidelines.  *See* Ex. 5 at JPMC_DEX_002919690, 713-14; Ex. 6 at 35:11-37:1, 53:21-54:25, 138:25-139:22, 152:1-153:12.  The mortgage loans underlying ***all*** of the Offerings were originated by common Originators.  *See* Tables 1-2.  J.P. Morgan Acquisition purchased ***all*** of the mortgage loans held by each of the nine Trusts.  *See* ¶18.  J.P. Morgan Acceptance served as the depositor for ***all*** of the Offerings.  ¶19; *see also* Ex. 6 at 110:7-23. In each of the Offerings, Chase originated many, if not all, of the loans.  *See* Table 2.

***Uniform Originator Approval Process and Personnel***:  J.P. Morgan Acquisition purchased mortgage loans only from approved sellers endorsed by senior personnel.  *See* Ex. 5 at JPMC_DEX_002919697; Ex. 8 at JPMS-FW-000322243.  As part of the approval process, J.P. Morgan evaluated all the Originators' financials, underwriting platform and guidelines.  *See id.*  The Transaction Management, Banking and Trading teams conducted due diligence of the Originators on-site.  *See* Ex. 5 at JPMC_DEX_002919697. ██████████████████████

████████████████████████████████████████████████

████████████████████████████████

***Uniform Due Diligence and Appraisals Process and Personnel***: ████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

- 19 -

██████████████████████████████████████████████ The

objectives of the mortgage loan due diligence review were to confirm that all the mortgage loans

produced and securitized by J.P. Morgan were originated in accordance to the seller's guidelines, not

originated in a fraudulent manner, and that the loan data was accurate and complete. *See* Ex. 5 at

JPMC_DEX_002919711; Ex. 6 at 61:3-10. ███████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████

      ██████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████

*Uniform Securitization Process and Personnel*: ███████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████,

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

As a result of the uniform process described above, the Offerings share fundamental similarities, including the same (1) sponsor/seller (J.P. Morgan Acquisition); (2) depositor (J.P. Morgan Acceptance); and (3) underwriter (JPMS). *See* ¶¶17-19; Ex. 6 at 110:7-23, 136:16-21. Likewise, the same J.P. Morgan personnel applied the same processes and procedures in acquiring mortgage loans, conducting due diligence on those loans, securitizing those loans into the Offerings, and selling the Certificates. *See* Ex. 5 at JPMC_DEX_002919690, 713-14; Ex. 6 at 35:11-37:1, 53:21-54:25, 138:25-139:22, 152:1-153:12. Proof of falsity will therefore be common among plaintiffs and absent Class members.

**Materiality**: Predominance is further satisfied because plaintiffs will prove materiality with generalized proof. Because materiality is an ***objective*** standard under the federal securities laws, it is subject to generalized proof and common to all Class members. *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, ___ U.S. ___, 133 S. Ct. 1184, 1195-96 (2013); *see also Rombach v. Chang*, 355 F.3d 164, 178 n.11 (2d Cir. 2004); *Merrill Lynch*, 277 F.R.D. at 139; *Constar*, 585 F.3d at 784-85.

**Control**: The issue of "control" under §15 of the Securities Act also presents common questions: namely, whether Individual Defendants acted as "control person[s]" of other defendants during the relevant time period. *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 92 (D. Conn. 2010).

**Damages**: Class-wide "damages" will be proven by means of the statutory method described in the Securities Act. *See* 15 U.S.C. §§77k(e), 77l(b). Such damages are subject to a common methodology that is readily applicable to all Class members. *See* Mason Report, ¶¶102-106; *IndyMac*, 286 F.R.D. at 235 ("Similar[] [to demonstrating materiality], damages in Securities Act

- 21 -

claims are calculated based on a statutory formula, so any differences in damages awards do not defeat class certification . . . .").  Although the specific amount of each Class member's damages may vary, this "does not defeat certification [since] the method of calculating damages is [still] common to the class." *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 181 (S.D.N.Y. 2008); *see also Seijas*, 606 F.3d at 58 ("[I]t is well-established that the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification.").

**Affirmative Defenses**:  In this case, defendants' affirmative defenses actually bolster the predominance of common issues.  For example, defendants' Fifteenth Affirmative Defense of "negative loss causation" is an important common question.  *See* Dkt. No. 139 at 29; *Merrill Lynch*, 277 F.R.D. at 139; *Constar*, 585 F.3d at 784-85.  Many of defendants' other affirmative defenses likewise present common questions, including: (1) whether the alleged misrepresentations were false, misleading or material; (2) whether defendants had a duty to disclose the allegedly omitted information; and (3) whether the alleged misrepresentations were protected as "forward-looking" statements.  As "[n]umerous courts have held," defendants' affirmative defenses do not defeat predominance or prevent class certification.[13]

Moreover, in the lone instance where a court in this Circuit did not **initially** grant class certification to MBS investors – after finding that defendants' affirmative defense of "actual knowledge" created individualized issues capable of defeating predominance – the court later granted class certification when the record was further developed.  *See RALI II*, 2012 U.S. Dist.

---

[13]   *See, e.g., In re Lehman Bros. Sec. & ERISA Litig.*, No. 09 MD 2017 (LAK), 2013 U.S. Dist. LEXIS 13999, at *22-*23 (S.D.N.Y. Jan. 23, 2013); *IndyMac*, 286 F.R.D. at 237-42 (rejecting defendants' arguments that affirmative defenses of knowledge, statute of limitations, reliance, due diligence and loss causation created individual issues sufficient to defeat predominance); *Tsereteli*, 283 F.R.D. at 212-17 (same as to knowledge, statute of limitations, reliance and loss causation defenses); *Merrill Lynch*, 277 F.R.D. at 114-20 (same); *Goldman*, 280 F.R.D. at 137-41 (same as to knowledge, statute of limitations and loss causation defenses).

LEXIS 148865, at *19-*20 (certifying class after plaintiffs' "expanded record" demonstrated that "adverse due diligence results and loan files, which could have yielded specific information about [the alleged] underwriting [non]compliance unlike loan tapes that merely convey loan characteristics, were not disclosed to the investors," and concluding that "even the most sophisticated class members . . . are therefore likely to be subject to the same knowledge . . . defense").  Here, too, the record shows that investors did not receive adverse due diligence results or loan files.  *See* Mason Report, ¶28; Ex. 6 at 141:20-142:9; Ex. 11 at 272:6-21.

### 2.   A Class Action Is Superior

Rule 23(b)(3) is satisfied if a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  As a general matter, "'securities suits . . . easily satisfy the superiority requirement of Rule 23.'"  *Merrill Lynch*, 277 F.R.D. at 120.  The court explained:

> "Most violations of the federal securities laws . . . inflict economic injury on large numbers of geographically dispersed persons such that the cost of pursuing individual litigation to seek recovery is often not feasible.  Multiple lawsuits would be costly and inefficient, and the exclusion of class members who cannot afford separate representation would neither be 'fair' nor an adjudication of their claims."

*Id.*; *see also IndyMac*, 286 F.R.D. at 242 ("Requiring [a class of several hundred members] to bring individual actions, seek joinder, or else sit on their claims, would be inefficient.").  Rule 23(b)(3) provides four factors for courts to consider in evaluating the superiority requirement:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).  These factors weigh heavily in favor of certifying the Class.

There is no overwhelming interest by Class members to proceed individually.  "'[T]he existence of large individual claims that are sufficient for individual suits is no bar to a class,'" particularly where, as here, "'the advantages of unitary adjudication exist to determine the defendant's liability.'"  *Bd. of Trs. of the AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, 269 F.R.D. 340, 355 (S.D.N.Y. 2010); *accord IndyMac*, 286 F.R.D. at 243; *see Merrill Lynch*, 277 F.R.D. at 121; *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM), 2007 U.S. Dist. LEXIS 57918, at *42 (S.D.N.Y. July 27, 2007) (noting that any class members who "would prefer to individually control the prosecution of their claims . . . have the opportunity to opt out or be represented by counsel of their own choice").  To the contrary, individual litigation of Class members' claims would be extremely costly and time-consuming.  The vast majority of absent Class members will not have sufficient resources or economic incentives to pursue individual actions.  *See JPMorgan Chase*, 269 F.R.D. at 355; *see also* Mason Report, ¶101.

Here, a class action not only is superior to individual actions, it is the ***only*** sensible course. There are over 1,541 geographically dispersed Class members that realistically cannot be joined. More importantly, according to defendants any action filed in the future would be barred by the Securities Act's three-year statute of repose.  Thus, this class action may be the only recourse available to purchasers who have not filed a separate action.  *See Berkley v. United States*, 45 Fed. Cl. 224, 234 (1999) ("[A]n expiring statute of limitations is a 'legitimate concern' when deciding whether or not to certify a class, and one which weighs in the plaintiff's favor.").

Moreover, it is desirable to concentrate litigation in this forum.  This action has been pending in this forum since 2009.  The Court has ruled on several motions to dismiss and various other motions, and is familiar with the asserted claims and defenses.  *Goldman*, 280 F.R.D. at 141

- 24 -

("Concentrating litigation in this forum is desirable because the Court is familiar with the history of this case, having ruled on earlier motions and discovery disputes."). Given the existence of at least 1,500 Class members who are dispersed throughout the country (*see* Mason Report, ¶¶99, 101), certifying a Class in this forum is the most desirable and efficient option for managing this litigation and ensuring uniform rulings concerning defendants' conduct.

Finally, this Court is unlikely to face manageability difficulties with this class action. *See IndyMac*, 286 F.R.D. at 243. Class actions predicated on §11 claims like this one are relatively easy to manage because they focus on the existence of material misrepresentations and do not require a plaintiff to establish scienter, reliance or loss causation. Accordingly, this case and the proposed Class satisfy the requirements of Rule 23(b)(3).

## III.   CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that the Court: (1) certify this case as a class action pursuant to Rule 23(a) and 23(b)(3); (2) appoint plaintiffs as Class Representatives; and (3) appoint Robbins Geller as Class Counsel.

DATED:  September 27, 2013                Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
ARTHUR C. LEAHY
DANIEL S. DROSMAN
SUSAN G. TAYLOR
IVY T. NGO
DARRYL J. ALVARADO
ANGEL P. LAU

<u>      s/ DANIEL S. DROSMAN      </u>
DANIEL S. DROSMAN

877588_1

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
LUKE O. BROOKS
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)

Lead Counsel for Plaintiff

- 26 -

**Exhibit A**

1.      J.P. Morgan Alternative Loan Trust 2007-A2

2.      J.P. Morgan Alternative Loan Trust 2007-S1

3.      J.P. Morgan Mortgage Acquisition Trust 2007-CH3

4.      J.P. Morgan Mortgage Acquisition Trust 2007-CH4

5.      J.P. Morgan Mortgage Acquisition Trust 2007-CH5

6.      J.P. Morgan Mortgage Trust Mortgage 2007-A3

7.      J.P. Morgan Mortgage Trust Mortgage 2007-A4

8.      J.P. Morgan Mortgage Trust Mortgage 2007-S2

9.      J.P. Morgan Mortgage Trust Mortgage 2007-S3

**TABLE 1**
**Common Originators in the Offerings**

| | Originators | In # of Deals | A2 | A3 | A4 | S1 | S2 | S3 | CH3 | CH4 | CH5 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | CHASE HOME FINANCE | 9 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| | *Chase Home Finance is an originator in all nine Offerings, representing 66.5% of total loans* | | | | | | | | | | |
| 2 | AMSOUTH BANCORPORATION | 6 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| 3 | CTX MORTGAGE | 6 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| 4 | METROCITI MORTGAGE | 6 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| 5 | OHIO SAVINGS BANK, FSB | 6 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| 6 | PHH MORTGAGE | 6 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| 7 | QUICKEN LOANS INC | 6 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| 8 | AMERICAN HOME MORTGAGE | 6 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| 9 | COUNTRYWIDE | 6 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| | *Nine common originators are in all of the non-Chase-only Offerings, representing 84.5% of total loans* | | | | | | | | | | |
| 10 | ALLIANCE BANCORP | 5 | ✓ | | ✓ | ✓ | ✓ | ✓ | | | |
| 11 | AMERICAN MORTGAGE NETWORK | 5 | ✓ | | ✓ | ✓ | ✓ | ✓ | | | |
| 12 | SIERRA PACIFIC | 5 | ✓ | | ✓ | ✓ | ✓ | ✓ | | | |
| 13 | BSM FINANCIAL | 5 | ✓ | ✓ | | ✓ | ✓ | ✓ | | | |
| 14 | SYNOVUS FINANCIAL CORPORATION | 5 | ✓ | | ✓ | ✓ | ✓ | ✓ | | | |
| | *Fourteen common originators are in all but one of the non-Chase-only Offerings, representing 88.6% of total loans* | | | | | | | | | | |
| 15 | PLAZA HOME MORTGAGE, INC | 4 | ✓ | | ✓ | ✓ | ✓ | | | | |
| 16 | WEICHERT | 4 | ✓ | ✓ | | | ✓ | ✓ | | | |
| 17 | ADVANCED FINANCIAL SERVICES | 4 | ✓ | | | ✓ | ✓ | ✓ | | | |
| 18 | COMUNITY LENDING | 4 | ✓ | | ✓ | ✓ | ✓ | | | | |
| 19 | FIRST SAVINGS | 4 | ✓ | | ✓ | ✓ | ✓ | | | | |
| 20 | JOHNSON BANK | 4 | | ✓ | ✓ | | ✓ | ✓ | | | |
| 21 | JUST MORTGAGE INC | 4 | ✓ | | ✓ | ✓ | ✓ | | | | |
| 22 | MORTGAGE NETWORK | 4 | ✓ | | | ✓ | ✓ | ✓ | | | |
| 23 | WELLS FARGO | 4 | ✓ | ✓ | ✓ | ✓ | | | | | |
| 24 | E-LOAN | 4 | | ✓ | | ✓ | ✓ | ✓ | | | |
| 25 | FAMILY LENDING | 4 | ✓ | ✓ | | ✓ | ✓ | | | | |
| 26 | LOANCITY.COM, INC. | 4 | ✓ | | | ✓ | ✓ | ✓ | | | |
| 27 | MORTGAGE IT LENDING | 4 | ✓ | ✓ | | ✓ | ✓ | | | | |
| 28 | NETBANK | 4 | ✓ | | ✓ | | ✓ | ✓ | | | |
| 29 | REAL ESTATE MORTGAGE NETWORK | 4 | | | ✓ | ✓ | ✓ | ✓ | | | |
| 30 | NATIONAL CITY MORTGAGE CO. | 3 | | ✓ | | | ✓ | | ✓ | | |
| 31 | GREENPOINT MORTGAGE FUNDING, INC. | 3 | | ✓ | | ✓ | ✓ | | | | |
| 32 | DHI MORTGAGE | 3 | | | | ✓ | ✓ | ✓ | | | |
| 33 | EVERBANK | 3 | | ✓ | | ✓ | ✓ | | | | |
| 34 | FAIRMONT FUNDING, LTD. | 3 | | | | ✓ | ✓ | ✓ | | | |
| 35 | FREEDOM MORTGAGE CORP. | 3 | ✓ | | | ✓ | ✓ | | | | |
| 36 | HOME 123 / NC CAPITAL CORP | 3 | | | | ✓ | ✓ | ✓ | | | |
| 37 | MANUFACTURERS & TRADERS | 3 | | ✓ | | | ✓ | ✓ | | | |
| 38 | MARKET STREET MTG CORP | 3 | ✓ | ✓ | ✓ | | | | | | |
| 39 | NEW YORK MORTGAGE COMPANY | 3 | | | | ✓ | ✓ | ✓ | | | |
| 40 | UNIVERSAL AMERICAN MORTGAGE, LLC | 3 | | | | ✓ | ✓ | ✓ | | | |
| 41 | WEBSTER BANK, N.A. | 3 | | | ✓ | | ✓ | ✓ | | | |

Sources: JPMS-FW-00030552-1125 at 0559-1098

**TABLE 2**
**Chase and American Home Mortgage Corp. Loans in the Offerings**

| | No. of Mortgage Loans | Chase Mortgage Loans | American Home Mortgage Loans |
|---|---|---|---|
| 2007-A2 (Pool 1 and A) | 4,109 | 58%, 35% | 20% (Pool 1) |
| 2007-A3 | 1,199 | 63% | Percentage not disclosed[2] |
| 2007-A4 | 1,232 | 68% | Percentage not disclosed[2] |
| 2007-S1 | 2,091 | 72% | 16% |
| 2007-S2 | 2,710 | 35% | 37% |
| 2007-S3 | 3,476 | 59% | 27% |
| 2007-CH3[1] | 6,451 | 100% | |
| 2007-CH4[1] | 6,350 | 100% | |
| 2007-CH5[1] | 6,874 | 100% | |
| | 34,492 | | |

[1]  Chase-only Offerings

[2]  These Offerings contain mortgage loans from American Home Mortgage Corp., but exact percentages are not disclosed.  *See* Mason Report, ¶75.

Sources: J.P. Morgan Mortgage Acquisition Trust 2007-CH5, Prospectus Supplement (Form 424B5) (June 28, 2007) at S-3, 8; JPMS-FW-00002335-701 at 372, 377; JPMS-FW-00016515-970 at 527, 533-34; JPMS-FW-00020292-512 at 301, 305; JPMS-FW-00022933-3171 at 2941, 2945; JPMS-FW-00025398-715 at 413, 417; JPMS-FW-00026776-7017 at 6785, 6789; JPMS-FW-00027813-8102 at 7820, 7825; JPMS-FW-00029139-428 at 146, 151





<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 27, 2013, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on September 27, 2013.

s/ DANIEL S. DROSMAN
DANIEL S. DROSMAN

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail: ddrosman@rgrdlaw.com

877588_1

# Mailing Information for a Case 1:09-cv-03701-JPO-JCF

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Floyd Abrams**
  fabrams@cahill.com

- **Mario Alba , Jr**
  malba@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com,drosenfeld@rgrdlaw.com

- **Darryl J. Alvarado**
  dalvarado@rgrdlaw.com,nhorstman@rgrdlaw.com

- **David Lionel Breau**
  dbreau@Sidley.com,nyefiling@Sidley.com

- **Luke Orion Brooks**
  lukeb@rgrdlaw.com

- **Darrell Scott Cafasso**
  cafassod@sullcrom.com,s&cmanagingclerk@sullcrom.com

- **Jarrett Scott Charo**
  jcharo@rgrdlaw.com

- **James J. Coster**
  jcoster@ssbb.com,managingclerk@ssbb.com

- **Daniel S. Drosman**
  ddrosman@rgrdlaw.com,E_File_SD@rgrdlaw.com,tholindrake@rgrdlaw.com,kcook@rgrdlaw.com

- **Thomas Edward Egler**
  tome@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Andrew James Ehrlich**
  aehrlich@paulweiss.com

- **Martin Flumenbaum**
  mflumenbaum@paulweiss.com

- **Jonah H. Goldstein**
  jonahg@rgrdlaw.com

- **Joseph Peter Guglielmo**
  jguglielmo@scott-scott.com,sfein@scott-scott.com,tcrockett@scott-scott.com,efile@scott-scott.com,aslaughter@scott-scott.com

- **Geoffrey M. Johnson**
  gjohnson@scott-scott.com,edewan@scott-scott.com,efile@scott-scott.com

- **Roberta Ann Kaplan**
  rkaplan@paulweiss.com

- **Justin Evan Klein**
  jklein@ssbb.com,managingclerk@ssbb.com

- **Angel P. Lau**
  alau@rgrdlaw.com

- **Thomas Livezey Laughlin , IV**
  tlaughlin@scott-scott.com,efile@scott-scott.com

- **Arthur C. Leahy**
  artl@rgrdlaw.com

- **Nathan R. Lindell**
  nlindell@rgrdlaw.com,susanw@rgrdlaw.com

- **Richard Franklin Lubarsky**
  rlubarsky@llf-law.com

- **Alison Leigh MacGregor**
  amacgregor@kelleydrye.com,docketing@kelleydrye.com

- **L. Dana Martindale**
  dmartindale@rgrdlaw.com

- **Ivy T. Ngo**
  ingo@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Alfred Robert Pietrzak**
  rpietrzak@sidley.com,nyefiling@sidley.com

- **Caroline M Robert**
  crobert@rgrdlaw.com

- **Ashley M Robinson**
  ashleyr@rgrdlaw.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,tmccormick@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Tammy Lynn Roy**
  troy@cahill.com,ndelutri@cahill.com,mmcloughlin@cahill.com,nmarcantonio@cahill.com

- **Joshua M. Rubins**
  jrubins@ssbb.com,managingclerk@ssbb.com,jdoty@ssbb.com

- **Samuel Howard Rudman**
  e_file_ny@rgrdlaw.com,mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Robert Andrew Sacks**
  sacksr@sullcrom.com,s&cmanagingclerk@sullcrom.com

- **Scott H. Saham**
  scotts@rgrdlaw.com

- **Owen Harris Smith**
  osmith@sidley.com,nyefiling@sidley.com

- **Dorothy Jane Spenner**
  dspenner@sidley.com,nyefiling@sidley.com

- **Hillary B. Stakem**
  hstakem@rgrdlaw.com

- **Tobias James Stern**
  tstern@paulweiss.com

- **Susan G. Taylor**
  susant@rgrdlaw.com

- **Carolina Cecilia Torres**
  ctorres@csgrr.com

- **Sarah Penny Windle**
  windls@cahill.com

- **Adam N. Zurofsky**
  azurofsky@cahill.com,MMcLoughlin@cahill.com,NMarcantonio@cahill.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)