

| | SIDLEY AUSTIN LLP | BEIJING | HONG KONG | SHANGHAI |
|---|---|---|---|---|
| | 787 SEVENTH AVENUE | BOSTON | HOUSTON | SINGAPORE |
| | NEW YORK, NY 10019 | BRUSSELS | LONDON | SYDNEY |
| | (212) 839 5300 | CHICAGO | LOS ANGELES | TOKYO |
| | (212) 839 5599 FAX | DALLAS | NEW YORK | WASHINGTON, D.C. |
| | | FRANKFURT | PALO ALTO | |
| | | GENEVA | SAN FRANCISCO | |

dbreau@sidley.com
(212) 839 5686                                    FOUNDED 1866

November 5, 2013

**By Hand Delivery**

The Honorable James C. Francis IV
Daniel Patrick Moynihan
  United States Courthouse
500 Pearl Street
New York, New York 10007-1312

> Re:   Fort Worth Employees' Retirement Fund v. J.P. Morgan Chase & Co., et al.,
>         No. 1:09-cv-03701 (JPO) (JCF) (S.D.N.Y.)

Dear Judge Francis:

We write on Defendants' behalf, pursuant to Local Civ. R. 37.2, to respectfully request a pre-motion conference concerning Defendants' intention to move to compel the former lead plaintiff in this action, Employees' Retirement System of the Government of the Virgin Islands ("USVI GERS"), to produce documents in response to Defendants' subpoena *duces tecum* (the "Subpoena"). (*See* Ex. A.) Defendants' counsel met and conferred with USVI GERS' counsel and did not reach agreement.

## I.   Factual and Procedural Background

This putative class action was filed by Fort Worth Employees' Retirement Fund on March 12, 2009 in New York state court and removed to this District on April 10, 2009. (Dkt. 1.) On September 28, 2009, USVI GERS moved to be appointed lead plaintiff, arguing that as a "large, organized institutional investor[]," it is "precisely the type of Lead Plaintiff Congress envisioned when it passed the PSLRA." (Dkt. 39 at 6.) On March 10, 2010, the Court appointed USVI GERS as lead plaintiff and its counsel, Robbins Geller Rudman and Dowd LLP, as lead counsel. (Dkt. 74.) USVI GERS filed the First Amended Complaint on April 9, 2010, and the Second Amended Complaint (the "USVI GERS Complaint") on July 8, 2010. (Dkts. 75, 85.) USVI GERS alleged that offering documents for nine[1] residential mortgage-backed

---

[1] The USVI GERS Complaint contains allegations concerning 11 offerings but the Court dismissed claims as to the 10 offerings in which USVI GERS (and the current Lead Plaintiffs) did not invest for lack of standing. Although claims as to those 10 offerings were reinstated following *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012), Lead Plaintiffs' pending motion for class certification dropped two of those

Sidley Austin (NY) LLP is a Delaware limited liability partnership doing business as Sidley Austin LLP and practicing in affiliation with other Sidley Austin partnerships

CONFIDENTIAL



The Honorable James C. Francis IV
November 5, 2013
Page 2

securities ("RMBS") offerings (the "Offerings") contained misrepresentations and omissions that
caused USVI GERS to suffer losses on its purchases of certificates issued in the Offerings (the
"Certificates").  As lead plaintiff, USVI GERS served Defendants with initial disclosures
pursuant to Federal Rule of Civil Procedure 26(a), as well as 52 document requests and 8
interrogatories.  (Exs. C, D, E.)

        On November 18, 2011, USVI GERS moved to withdraw as lead plaintiff and substitute
Laborers Pension Trust Fund for Northern California ("Northern California Laborers").
(Dkt. 151.)  Although USVI GERS' moving papers do not specify *why* it sought to withdraw,

█████████████████████████████████████████████████████████████████

Court granted USVI GERS' motion to withdraw, and subsequently appointed Northern
California Laborers and Construction Laborers Pension Trust for Southern California as Lead
Plaintiffs. (Dkts. 170, 175.)  USVI GERS' counsel is also Lead Plaintiffs' counsel and was again
appointed Lead Counsel.  (*Id.*)  Lead Plaintiffs did not file a new complaint, but rather adopted
the USVI GERS Complaint, which remains the operative complaint in this action. (*See* Dkt. 152
at 2.)  Lead Plaintiffs also adopted all of the document requests and interrogatories that USVI
GERS previously served on Defendants.  (*Id.* at 2-3.)

        On January 7, 2013, Defendants issued a subpoena *duces tecum* to USVI GERS from the
United States District Court for the Southern District of California (the "California Subpoena").
The California Subpoena sought three general categories of documents:  (1) documents
referenced in or concerning allegations in the USVI GERS Complaint or; (2) documents
sufficient to reflect USVI GERS' trades; and (3) documents concerning knowledge of USVI
GERS or its investment managers at the time that it purchased its Certificates.  (Ex. H.)  The
California Subpoena was served on USVI GERS' counsel at their office in San Diego pursuant
to their agreement to accept service of a subpoena to USVI GERS and required production at
Defendants' counsel's Los Angeles office.  On January 25, 2013, USVI GERS produced a mere
5 pages of trading records. (Ex. I.)  USVI GERS then refused to produce anything else and,
despite having already produced documents, filed a motion to quash the California Subpoena in
the Southern District of California.  Because the California Subpoena inadvertently specified a

---

offerings because the only two investors in those offerings during the proposed class period already have filed
individual actions (Dkt. 223 at 1 n.1).
[2] A CUSIP number is a nine-character alphanumeric code used to identify any North American security for the
purpose of facilitating clearing and settlement of trades.

CONFIDENTIAL



The Honorable James C. Francis IV
November 5, 2013
Page 3

place of production outside the Southern District of California, Defendants agreed to withdraw the California Subpoena.

During a meet and confer call on March 11, 2013, USVI GERS' counsel agreed to accept service of a new subpoena issued from this District at their office at 52 Duane Street, 7th Floor, New York, New York 10007. (Ex. J.)  Pursuant to that agreement, Defendants issued the Subpoena to USVI GERS from this District and served it by hand delivery on April 18, 2013 to USVI GERS' counsel's office at 52 Duane Street in New York. (Exs. A, B.)  The Subpoena specifies the place of production as Defendants' counsel's office at 787 Seventh Avenue, New York, New York, 10019. (Ex. A.)

The Subpoena seeks the same three general categories of documents from USVI GERS that were requested in the California Subpoena:  Request Nos. 1 through 3 seek documents and communications referenced in the USVI GERS Complaint or that concern the allegations therein, and communications with individuals referenced in the USVI GERS Complaint; Request No. 4 seeks documents sufficient to reflect USVI GERS' trades (which USVI GERS already produced in response to the California Subpoena); and Request Nos. 5 through 9 seek documents and communications concerning knowledge of USVI GERS or its investment managers at the time that it purchased its Certificates.  On May 1, 2013, USVI GERS served objections to the Subpoena. (Ex. K.)  During a meet and confer call on May 20, 2013, counsel for USVI GERS asserted that Request Nos. 1 through 3 seek "contention discovery" that cannot be sought from a non-party, and that Request Nos. 5 through 9 seek improper absent class discovery.  Following the call, Defendants' counsel emailed USVI GERS' counsel case law demonstrating that the Subpoena is appropriate and well within the bounds of discovery permitted by courts in this District and elsewhere. (Ex. L.)

During a follow-up meet and confer call on August 22, 2013, USVI GERS' counsel asserted—for the first time—that the Subpoena is invalid on the ground that a Rule 45 subpoena cannot reach documents located more than 100 miles from the issuing district.  USIV GERS' counsel refused to discuss the objections previously raised on the May 20, 2013 call, but expressly confirmed that Defendants' counsel had satisfied all meet-and-confer obligations with respect to the Subpoena.

## II.    The Subpoena Complies with the Geographical Requirements of Rule 45

Under Rule 45 of the Federal Rule of Civil Procedure, a non-party subpoena *duces tecum* must satisfy three interrelated geographic requirements concerning: (1) the district from which the subpoena is issued; (2) the location of production; and (3) the location of service.  Under Rule 45(a)(2)(C), which provides that a subpoena must issue "from the court for the district where the production or inspection is to be made," the locations of requirements (1) and (2) must

CONFIDENTIAL


SIDLEY AUSTIN LLP

The Honorable James C. Francis IV
November 5, 2013
Page 4

be same. With respect to requirement (3), Rule 45(b)(2) provides that a subpoena can be served in a number of valid locations, including "any place . . . within the district of the issuing court." Thus, a subpoena that is served in the district of the issuing court and requires production in that district satisfies the geographical requirements of Rule 45. *See* 9 MOORE'S FEDERAL PRACTICE § 45.11[1][c] (Matthew Bender 3d ed. 2013) (subpoena for documents "must issue from the district court in which production . . . will occur"); *id.* § 45.22[1] ("A subpoena issuing from a federal district court may be served anywhere within the territorial confines of the district.").

Here, Defendants' Subpoena to USVI GERS satisfies all three requirements. First, the Subpoena was issued from this District. Second, the Subpoena specifies Defendants' counsel's Manhattan office, in this District, as the place of production. Third, pursuant to USVI GERS' counsel's agreement to accept service at its Manhattan office, the Subpoena was validly served in Manhattan, in this District, by personal delivery. (Exs. B, J.) Accordingly, the Subpoena is valid on its face—it was issued from this District, requires production in this District, and was properly served in this District.

USVI GERS contends that, under Rule 45(e), the Subpoena cannot reach its documents, located more than 100 miles from this District in the U.S. Virgin Islands. USVI GERS misconstrues Rule 45(e). Although Rule 45(e) excuses a non-party's failure to obey "if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii)," it is black-letter law that "[a] subpoena that commands a witness to provide documents, without requiring a personal appearance by the custodian, may be enforced *even if the documents are located at a place outside the 100-mile geographic limit*." 9 MOORE'S FEDERAL PRACTICE § 45.51[2] (Matthew Bender 3d ed. 2013) (emphasis added); *see* 9A WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 2456 at 417 (3d ed. 2008) ("[E]ven records kept beyond the territorial jurisdiction of the district court issuing the subpoena may be covered if they are controlled by someone subject to the court's jurisdiction."). The Advisory Committee Notes to Rule 45 expressly confirm that the location of the documents is irrelevant: "Paragraph (a)(2) makes clear that the person subject to the subpoena is required to produce materials in that person's control *whether or not the materials are located within the district or within the territory within which the subpoena can be served*."[3] FED. R. CIV. P. 45, Adv. Comm. Notes, 1991 Amendment Subdivision (a) (emphasis added). Moreover, Rule 45(c)(2)(A) makes clear that a recipient of a subpoena *duces tecum* "need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial." Here, the Subpoena plainly is valid because it does not require anyone to travel anywhere to produce documents.[4]

---

[3] USVI GERS has never claimed that it does not control the docs sought by the Subpoena.

[4] Indeed, USVI GERS previously produced documents to Defendants by email in response to the California Subpoena. (Ex. I.) USVI GERS' objections and responses to this Subpoena incorporate its prior production. (*See*

CONFIDENTIAL



The Honorable James C. Francis IV
November 5, 2013
Page 5

USVI GERS' argument appears to be based on a handful of cases that rely on the Fifth Circuit's statement in *Natural Gas Pipeline Co. of America v. Energy Gathering, Inc.*, 2 F.3d 1397 (5th Cir. 1993), that "a federal court sitting in one district cannot issue a subpoena *duces tecum* to a non-party for the production of documents located in another district." *Id.* at 1406. However, in a subsequent decision by Judge Alito, the Third Circuit observed that "the basis for the statement [in *Natural Gas Pipeline*] is unclear" and explained that the place where documents are stored is irrelevant for Rule 45 purposes:

> [Rule 45(a)(2)] states that a subpoena calling only for the "production or inspection" of documents "shall issue from the court for the district in which the production or inspection is to be made." "Production" refers to the delivery of documents, not their retrieval, and therefore "the district in which the production . . . is to be made" is not the district in which the documents are housed but the district in which the subpoenaed party is required to turn them over.

*Hay Group, Inc. v. E.B.S. Acquisitions Corp.*, 360 F.3d 404, 412, 413 n.5 (3d Cir. 2004).[5]

Courts in this District and elsewhere have similarly regularly rejected arguments based on the 100-mile travel restriction of Rule 45 where a subpoena requests only documents. For example, Judge Sweet explained that the 100-mile travel limitation of Rule 45(c)(3)(A)(ii) applies to individuals rather than entities and that "Rule 45's goal is to prevent inconvenience to the flesh-and-blood human beings who are asked to testify, not the legal entity for whom those human beings work. That the Rule focuses on the individual is supported by the fact that *there is no such limitation regarding production by a nonparty of documents*." *Price Waterhouse LLP v. First Am. Corp.*, 182 F.R.D. 56, 62 (S.D.N.Y. 1998) (emphasis added); *see also Harris v. Jamaica Auto Repair, Inc.*, 2009 WL 2242355, at *2 (E.D.N.Y. July 27, 2009) (court not required to quash subpoena pursuant to Rule 45(c)(3)(A)(ii) where the "subpoena was for documents, and did not require any person to travel more than one hundred miles from his place of residence"); *U.S. Bank Nat'l Ass'n v. James*, 264 F.R.D. 17, 19-20 (D. Me. 2010) (100-mile rule did not excuse compliance by out-of-state non-party because "the subpoenas at issue only

---

Ex. F at 8 (objecting to Request No. 4 "to the extent it seeks information that has already been provided to defendants").)

[5] Although USVI GERS' counsel suggested on the August 22, 2013 call that its newly raised objection is jurisdictional, there can be no serious question that this Court has personal jurisdiction over USVI GERS in this action, as it purposefully availed itself of the Court's jurisdiction by filing the operative complaint and serving as the Lead Plaintiff. *Cf. Dow Chem. v. Calderon*, 422 F.3d 827, 834 (9th Cir. 2005) (stating that under "affirmative relief rule," "personal jurisdiction exists where a defendant also independently seeks *affirmative* relief in a separate action before the same court concerning the same transaction or occurrence"); *accord Gen. Contracting & Trading Co. v. Interpole, Inc.*, 940 F.2d 20, 24 (1st Cir. 1991).

CONFIDENTIAL



The Honorable James C. Francis IV
November 5, 2013
Page 6

require the production of documents, and those documents can be 'produced' at the specified address in Portland, Maine, by mail. Indeed, Rule 45(c)(2)(A) specifically provides that a person commanded to produce documents 'need not appear in person at the place of production.'" (quoting FED. R. CIV. P. 45(c)(2)(A))); *Walker v. Ctr. for Food Safety*, 667 F. Supp. 2d 133, 138 (D.D.C. 2009) (same); *Jett v. Penner*, 2007 WL 127790, at *2 (E.D. Cal. Jan. 12, 2007) (same); *Stewart v. Mitchell Transp.*, 2002 WL 1558210, at *3 & n.2 (D. Kan. July 11, 2002) (same).[6]

Even if USVI GERS' interpretation of Rule 45 were correct, USVI GERS waived any objection to the Subpoena based on the location of documents. Rule 45(c)(2)(B) requires a subpoena recipient to raise all of its objections at once, "rather than in staggered batches," "so that discovery does not become a 'game.'" *In re DG Acquisition Corp.*, 151 F.3d 75, 81 (2d Cir. 1998) (citation omitted). USVI GERS has not complied with this rule with respect to either the California Subpoena or the Subpoena. USVI GERS' objections and responses served on May 1, 2013 were silent on the location of the documents (*see* Ex. K), and counsel for USVI GERS failed to mention this objection during the first meet and confer call on May 20, 2013. It was not until the August 22, 2013 call—nearly four months after USVI GERS served its written objections and responses—that counsel for USVI GERS first asserted that the Subpoena could not reach USVI GERS' documents in the U.S. Virgin Islands. Indeed, USVI GERS had already produced documents in response to the California Subpoena, which is no different in terms of location of documents. This Court should recognize USVI GERS' objection for what it is: a "Hail Mary" pass as the clock runs out in an effort to avoid compliance with the Defendants' valid Subpoena.

## III. As the Former Lead Plaintiff that Filed the Operative Complaint, USVI GERS Cannot Avoid Its Obligation to Produce Relevant Documents

USVI GERS' argument that Request Nos. 1 through 3 of the Subpoena seek "contention discovery" that is improper from a non-party is misplaced. USVI GERS is not on equal footing with other absent class members. Having filed the operative complaint in this action (and served numerous still operative discovery requests on Defendants), USVI GERS cannot now refuse to

---

[6] Following the August 22, 2013 meet and confer, counsel for USVI GERS emailed five cases to Defendants' counsel that USVI GERS claims support its position. Those cases are readily distinguished. *See Anderson v. Gov't of the V.I.*, 180 F.R.D. 284, 290 (D.V.I. 1998) (quashing subpoena *duces tecum* because, among other things, service exceeded 100-mile limit of Rule 45(b)(2)(B)); *McAuslin v. Grinnel Corp.*, 1999 U.S. Dist. LEXIS 693, at *9, 11 (E.D. La. Jan. 20, 1999) (denying motion to compel where non-party did not have control over subpoenaed documents); *Doyle v. Gonzales*, 2011 WL 2607167, at *5 (E.D. Wa. July 1, 2011) (quashing subpoena *duces tecum* where service made more than 100 miles from place specified for production); *Brinkley v. Houk*, 2008 WL 4560777, at *1-3 (N.D. Ohio, Oct. 8, 2008) (quashing subpoena *duces tecum* where subpoena required non-party to travel more than 100 miles to place of production); *Estate of Ungar v. Palestinian Auth.*, 451 F. Supp. 2d 607, 611 (S.D.N.Y. 2006) (modifying subpoena *ad testificandum* where requiring witnesses to appear for depositions in New York City would violate the 100-mile restriction of Rule 45(c)(3)(A)(ii)).

CONFIDENTIAL



The Honorable James C. Francis IV
November 5, 2013
Page 7

produce relevant documents simply because Lead Plaintiffs stepped into USVI GERS' shoes. For example, in a recent RMBS case in the Eastern District of New York, Judge Wall denied a motion for a protective order regarding subpoenas issued to absent class members that were former plaintiffs or lead plaintiff movants, accepting the defendants' argument that discovery from these entities was appropriate because "these aren't your typical absent class members who have no connection to the case," but rather entities "who actually went out and filed a complaint or moved and sought to be the lead plaintiff, but who happened to have lost." Transcript of Hearing at 4, 14, 23, *Plumbers' & Pipefitters' Local #562 Supplemental Plan & Trust v. J.P. Morgan Acceptance Corp. I*, No. 08-cv-01713-PKC-WDW (Mar. 1, 2013) (Ex. M). Judge Wall's reasoning applies even more so to USVI GERS, which filed not merely "a complaint," but rather the currently operative complaint in this action.[7]

Moreover, any objection based on burden is misplaced. As USVI GERS stated in its Rule 26 initial disclosures, USVI GERS already "has in its possession, custody or control documents related to [its] purchase of the securities at issue in this action, *as well as other documents relevant to the allegations of the [USVI GERS Complaint] and defendants generally.*" (Ex. C at 6 (emphasis added).) In addition, when class members from whom discovery is sought are, like USVI GERS, "organized entities providing financial and other benefits to members of their constituencies," there is a reduced concern that compelled discovery will be "unduly burdensome or imperil the maintenance of the class." *Laborers Local 17 Health & Ben. Fund v. Philip Morris, Inc.*, 1998 WL 241279, at *3 (S.D.N.Y. 1998) (citing *Town of New Castle*, 1991 WL 159848, at *2). USVI GERS is a sophisticated entity represented by counsel for the current Lead Plaintiffs, and is fully capable—and was demonstrably willing—to bear some burden in prosecuting this action. *See Robertson v. Nat'l Basketball Ass'n*, 67 F.R.D. 691, 699 (S.D.N.Y. 1975) (observing that "propriety of allowing some form of class discovery should gain force when" it is sought from "readily identifiable members with not insubstantial claims who specifically authorized this litigation").

## IV.   The Subpoena Seeks Documents Relevant to Class Certification

Even if USVI GERS were on equal footing with passive absent class members, USVI GERS' contention that the Subpoena seeks improper class discovery is wrong. It is well-established that a defendant is entitled to discovery of issues relevant to class certification. *See Chateau de Ville Prods., Inc. v. Tams-Witmark Music Library, Inc.*, 586 F.2d 962, 966 (2d Cir. 1978) (vacating class certification where district court refused defendant's request for discovery

---

[7] Even if USVI GERS seeks to opt-out of the class, it should be compelled to produce documents in response to Request Nos. 1-3 of the Subpoena concerning allegations in the USVI GERS Complaint. *See, e.g., In re Vitamins Antitrust Litig.*, 198 F.R.D. 296, 305 (D.D.C. 2000) (named plaintiffs that were not class representatives were required to respond to pending discovery requests as prerequisite to granting motion for voluntary dismissal that was filed in order to avoid such discovery obligations).



The Honorable James C. Francis IV
November 5, 2013
Page 8

relating to class certification issues). Specifically, discovery of absent members of a putative class is allowed where it (1) "is needed for the purposes of trial or the issues common to the class, (2) is narrowly tailored, (3) will [not] impose undue burden on the absent class members, and (4) is not available from representative plaintiffs." *In re Warner Chilcott Sec. Litig.*, 2008 WL 344715, at *2 (S.D.N.Y. Feb. 4, 2008); *see also* Transcript of Hearing at 23, *Plumbers' & Pipefitters' Local #562 Supplemental Plan & Trust v. J.P. Morgan Acceptance Corp. I*, No. 08-cv-01713-PKC-WDW (Mar. 1, 2013) (Wall, J.) (Ex. M) (denying motion for protective order for subpoenas to selected absent class members); *A&R Body Specialty & Collision Works, Inc. v. Progressive Cas. Ins. Co.*, 2012 WL 3854954, at *3-4 (D. Conn. Sept. 5, 2012) (granting defendants permission to contact putative class members because "both parties need to be able to communicate with putative class members—if only to engage in discovery regarding issues relevant to class certification—from the earliest stages of class litigation"); *Town of New Castle v. Yonkers Contracting Co.*, 1991 WL 159848, at *1-2 (S.D.N.Y. Aug. 13, 1991) (allowing defendants to depose absent class members); *In re Aftermarket Filters*, 2010 WL 3909502, at *1-3 (N.D. Ill. Oct. 1, 2010) (denying motion to quash subpoenas seeking documents relevant to class certification from absent putative class members); *Schwartz v. Celestial Seasonings, Inc.*, 185 F.R.D. 313, 320 (D. Colo. 1999) (permitting defendants to include questionnaire to absent class members with notice of action); 7B WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1796.1 (3d ed. 2005) ("The first, and probably most basic, issue that has arisen is whether a party opposing a class can seek discovery of the absent class members as 'parties.' Although at least two district courts initially answered that question in the negative, most have recognized that discovery is proper.").

The Subpoena seeks documents from USVI GERS that are necessary for Defendants to oppose Lead Plaintiffs' pending motion for class certification.[8] Request Nos. 5 through 9 of the Subpoena seek documents concerning USVI GERS' knowledge at the time it purchased its Certificates. Such discovery is relevant to whether there are differences in knowledge among class members sufficient to defeat the predominance requirement of Rule 23(b)(3). Defendants will not be afforded a fair opportunity to challenge class certification without discovery from other putative class members, particularly the former lead plaintiff, and courts in this Circuit have repeatedly emphasized the importance at the class certification stage of examination of the knowledge and information available to class members. *See, e.g.*, *In re Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 121 (2d Cir. 2013) (affirming district court's finding of predominance because "[defendant] points to generalized proof supporting [knowledge] defense—proof wholly consistent with class action treatment—***but the record does not contain a single piece of evidence*** suggesting actual individual knowledge on the part of a specific customer" (emphasis added) (quotation marks omitted)); *N.J. Carpenters Health Fund v. RALI Series 2006-QO1*, 477 F. App'x 809, 813 (2d Cir. 2012) ("The court had a limited record ***without the benefit of***

---

[8] Defendants' opposition to Lead Plaintiffs' motion for class certification is due on January 10, 2014.

CONFIDENTIAL



The Honorable James C. Francis IV
November 5, 2013
Page 9

*discovery of absent potential class members' records*. On the basis of this limited evidence, it permissibly determined that knowledge defenses would require extensive individual proceedings. Perhaps another inference could have been drawn, and *perhaps a different inference might be drawn on a renewed motion on a fuller record*." (emphasis added)); *In re IPO Sec. Litig.*, 471 F.3d 24, 41, 44 (2d Cir. 2006) (observing that "the district judge must receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met," and holding that predominance was not satisfied for Section 11 claims based on evidence of "widespread knowledge that would precipitate individual inquiries as to the knowledge of each member of the class"); *Pub. Emps.' Retirement Sys. of Miss. v. Merrill Lynch & Co.*, 277 F.R.D. 97, 118–19 (S.D.N.Y. 2011) ("Sheer conjecture that class members 'must have' discovered [the misrepresentations] is insufficient to defeat Plaintiff's showing of predominance *when there is no admissible evidence to support Defendants' assertions*." (emphasis added)).

The discovery that Defendants seek also is necessary to establish whether there are conflicts between class members, which could defeat class certification or, at the very least, substantially limit any certified class. One source of conflict that can be elucidated by discovery is the conflict between class members that purchased Certificates before and after the alleged "truth" concerning the alleged misrepresentations became known to investors. Notably, USVI GERS purchased its Certificates in July 2008, months after March 2008 news reports of an allegedly crucial "internal memo explaining ways to 'cheat' and 'trick'" Chase Home Finance's automated underwriting system relied upon in the USVI GERS Complaint (Dkt. 85 at ¶ 95), whereas Lead Plaintiffs first purchased their Certificates in October 2007, long before such news reports. Such differences in purchase timing recently led one court in this District to limit a certified class in an RMBS action to "initial purchasers who bought the securities directly from the underwriters or their agents no later than ten trading days after the offering date." *N.J. Carpenters Health Fund v. Residential Capital, LLC*, 288 F.R.D. 290, 296 (S.D.N.Y. 2013) (Baer, J.).

\*       \*       \*

Defendants are available to attend a pre-motion conference at the Court's convenience to discuss these issues.

Respectfully submitted,

David L. Breau

Attachments

cc:    Daniel S. Drosman (*via email*)
       Susan G. Taylor (*via email*)

CONFIDENTIAL