```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -:
FORT WORTH EMPLOYEES' RETIREMENT   :  09 Civ. 3701 (JPO) (JCF)
FUND, et al.,                      :
                                   :          MEMORANDUM
                                   :          AND   ORDER
            Plaintiffs,            :
                                   :
    - against -                    :
                                   :
J.P. MORGAN CHASE & CO., et al.,   :
                                   :
            Defendants.            :
- - - - - - - - - - - - - - - - - -:
```
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

This is a securities action brought on behalf of a class of purchasers of residential mortgage-backed securities issued by J.P. Morgan Acceptance Corporation I. The plaintiffs have submitted a letter motion seeking a ruling that: (1) documents clawed back at a witness' deposition are not subject to the attorney-cleint privilege; (2) documents withheld or clawed back by the defendants as related to Suspicious Activity Reports ("SARs") must be disclosed; and (3) the defendants have waived any privilege by failing to produce an adequate privilege log in a timely manner. (Letter of Hillary B. Stakem dated March 11, 2015 ("Stakem 3/11/15 Letter")). I will address each issue in turn.

A. Attorney-Client Privilege

During the deposition of Alison Malkin on November 18, 2014, the defendants clawed back portions of two documents that the

1

plaintiffs intended to introduce as exhibits. (Deposition of Alison Malkin, excerpt attached as Exh. A to Stakem 3/11/15 Letter, at 134-35, 161-62). The first document is an e-mail chain from which the defendants have now redacted a portion in which the author, an employee of defendant J.P. Morgan Securities, LLC, asks another employee about the materiality of certain contemplated action. (E-mail from Tom Roh to Robert B. Miller dated Aug. 10, 2006, attached as part of Exh. B to Stakem 3/11/15 Letter and as part of Exh. 1 to Letter of Tom A. Paskowitz dated March 23, 2015 ("Paskowitz Letter")). Neither the sender nor the recipient is an attorney, but the e-mail is copied to in-house counsel. (Paskowitz Letter at 2). The redacted material is privileged. The discussion of materiality relates to a legal matter, see Davis v. City of New York, No. 10 Civ. 699, 2012 WL 612794, at *11 (S.D.N.Y. Feb. 27, 2012) (finding that use of legal term of art indicated communication relating to legal advice), and inclusion of counsel in the chain was a solicitation of legal advice, see TVT Records v. Island Def Jam Music Group, 214 F.R.D. 150-51 (S.D.N.Y. 2003) (finding communications privileged where "to the extent the messages were not directed to or from counsel, they were at least copied to counsel for the purpose of allowing counsel to respond to ongoing developments with legal advice").

The second document is also an e-mail chain between non-

lawyers from which the defendants have redacted a discussion of in-house counsel's position on an issue. (E-mail from Alison X. Malkin to William C. Buell dated Oct. 26, 2006 & e-mail from William C. Buell to Alison Malkin dated Oct. 26, 2006, attached as part of Exh. C to Stakem 3/11/15 Letter and Exh. 2 to Paskowitz Letter). These communications, too, are privileged. "[A] communication containing legal advice does not lose its privileged status when shared among corporate employees who share responsibility for the subject matter of the communication." In re Currency Conversion Antitrust Litigation, No. 05 Civ. 7116, 2010 WL 4365548, at *4 (S.D.N.Y. Nov. 3, 2010) (internal quotations marks and alteration omitted).

Accordingly, the defendants may continue to withhold the redacted portions of these two documents.

B. Suspicious Activity Reports

On November 19, 2014, the defendants clawed back almost 600 documents on the ground that they are SARs or information indicating the existence of SARs, which is prohibited from being disclosed by 31 C.F.R. § 1020.320(e). (Stakem 3/11/15 Letter at 3; Letters of David L. Breau dated Nov. 19, 2014, attached as Exhs. D & E to Stakem 3/11/15 Letter). Subsequently, the defendants produced a privilege log identifying several hundred additional documents that they were withholding on the same basis. (Stakem

3/11/15 Letter at 3; Privilege Log, attached as Exh. H to Stakem 3/11/15 Letter).  The documents clawed back generally consist of (1) logs of mortgage loan put-back claims made or received, (2) logs of repurchase claims made or received, (3) logs of potential misrepresentations relating to the mortgage loans, or (4) quality assurance audit spreadsheets and related cover e-mails.  (Stakem 3/11/15 Letter at 3-4).  The defendants maintain that the information at issue was properly clawed back or withheld as "part of the separate and regulatory-required process to detect and report suspicious activity, and was not created during the ordinary course of business by JPMorgan's quality assurance or repurchase departments."  (Paskowitz Letter at 4 (internal quotation marks omitted)).

The defendants take too broad a view of their confidentiality obligations in connection with SARs.  The Bank Secrecy Act, 31 U.S.C. § 5311 et seq., provides in part that "[t]he Secretary [of the Treasury] may require any financial institution . . . to report any suspicious transaction relevant to a possible violation of law or regulations."  31 U.S.C. § 5318(g)(1).  The statute also prohibits the disclosure of such reports in order not to alert a suspected wrongdoer of an investigation:

> If a financial institution or any director, officer, employee, or agent of any financial institution, voluntarily or pursuant to this section or any other authority, reports a suspicious transaction to a

4

>       government agency . . . neither the financial
> institution, director, officer, employee, or agent of
> such institution (whether or not any such person is still
> employed by the institution), nor any other current or
> former director, officer, or employee of, or contractor
> for, the financial institution or other reporting person,
> may notify any person involved in the transaction that
> the transaction has been reported. . . .

31 U.S.C. § 5318(g)(2)(A).  The various federal agencies responsible for regulating financial institutions have promulgated regulations to implement the statute.  For example, the Office of the Comptroller of the Currency ("OCC") and the Financial Crimes Enforcement Network ("FinCEN"), the agency with which SARS are filed, have issued rules that closely track each other.  See 31 C.F.R. § 1020.320 (OCC); 12 C.F.R. § 21.11 (FinCEN).  The OCC regulations provide in pertinent part that "[n]o bank, and no director, officer, employee, or agent of any bank, shall disclose a SAR or any information that would reveal the existence of a SAR."  31 C.F.R. § 1020.320(e)(1)(i).  The FinCEN rule is identical except that it governs any "national" bank.  12 C.F.R. § 21.11(k)(1)(i).  The regulations include "rules of construction," the most pertinent of which states that the regulations do not prohibit disclosure of "[t]he underlying facts, transactions, and documents upon which a SAR is based."  31 C.F.R. § 1020.320(e)(1)(ii)(A)(2) (OCC); 12 C.F.R. § 21.11(k)(1)(ii)(A)(ii) (FinCEN).

The language of the regulations, then, supports the plaintiffs' argument that the information withheld by the

5

defendants should be produced. But there remains a dispute arising from the commentary that accompanied publication of the OCC's final rule. This commentary states in part:

> Documents that may identify suspicious activity, but that do not reveal whether a SAR exists (e.g., a document memorializing a customer transaction such as an account statement indicating a cash deposit or a record of a funds transfer), should be considered as falling within the underlying facts, transactions, and documents upon which a SAR is based, and need not be afforded confidentiality. This distinction is set forth in the final rule's second rule of construction . . . and reflects relevant case law.

Confidentiality of Suspicious Activity Reports, 75 Fed. Reg. 75576-01, 75579 (Dec. 3, 2010) (to be codified at 12 C.F.R. pt. 21). But the notes then go on to say:

> However, the strong public policy that underlies the SAR system as a whole -- namely, the creation of an environment that encourages a national bank to report suspicious activity without fear of reprisal -- leans heavily in favor or applying SAR confidentiality not only to a SAR itself, but also in appropriate circumstances to material prepared by the national bank as part of its process to detect and report suspicious activity, regardless of whether a SAR ultimately was filed or not.

Id. The defendants contend that this latter language justifies their position.

There are two flaws with the argument. First, the head of JPMorgan's Fraud Operations group has testified that the fraud investigations that generated the types of documents at issue would be conducted independent of whether they might result in the filing of a SAR. (Deposition of Susan S. Dailey, excerpts attached as

6

Exh. L to Letter of Hillary B. Stakem dated March 27, 2015 ("Stakem 3/27/15 Letter) at 76, 107-08).  Second, I agree with the court's analysis in Wultz v. Bank of China Ltd., __ F. Supp. 3d __, __, 2014 WL 5690342, at *3 (S.D.N.Y. 2014), which found that the language relied upon by the defendants was too tentative and qualified to constitute an authoritative interpretation of the regulation as prohibiting disclosure of the type of documents at issue here.  See also In re Whitley, No. 10-10426C-7G, 2011 WL 6202895, at *4 (Bankr. M.D.N.C. Dec. 13, 2011) ("The letter and spirit of the limitation [on disclosure] is served by shielding any SAR filed by a bank as well as any document that refers to a SAR having been filed or refers to information as being part of a SAR or otherwise reveals the preparation or filing of a SAR.").

    The defendants shall therefore produce within two weeks of the date of this order the documents withheld on the basis of the SAR nondisclosure regulations, with the exception of any document that refers to the filing of a SAR, refers to the fact that a SAR was not filed, or would otherwise disclose information about the decision to file or refrain from filing a SAR.  Copies of any documents withheld on that basis hereafter shall be provided to the Court within two weeks for in camera review.

    C. Privilege Logs

    The dispute concerning privilege logs may be moot, in whole or

7

in part. Apparently, the defendants produced a revised privilege log on March 23, 2015, along with an additional 1,315 documents. (Paskowitz Letter at 11-12; Stakem 3/27/15 Letter at 5). On that same date, they indicated the intention of providing still more documents and a further revised log "shortly." (Paskowitz Letter at 12). Not surprisingly, when the plaintiffs responded four days later, they did not address the adequacy of the revised log they had just received. (Stakem 3/27/15 Letter at 5). Counsel shall therefore advise the Court within two weeks of the extent to which there remains a live controversy about the sufficiency of the defendants' privilege logs.

Conclusion

For the reasons discussed, the plaintiffs' letter application for certain discovery rulings is granted in part and denied in part as set forth above.

SO ORDERED.

*/s/ James C. Francis IV*
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       April 14, 2015

Copies transmitted this date:

Arthur C. Leahy, Esq.
Ivy T. Ngo, Esq.
Jonah H. Goldstein, Esq.
Matthew I. Alpert, Esq.
Nathan R. Lindell, Esq.
Scott H. Saham, Esq.
Susan G. Taylor, Esq.
Thomas E. Egler, Esq.
L. Dana Martindale, Esq.
Daniel S. Drosman, Esq.
Darryl J. Alvarado, Esq.
Caroline M. Robert, Esq.
Hilary B. Stakem, Esq.
Angel P. Lau, Esq.
Ashley M. Robinson, Esq.
Lucas F. Olts, Esq.
Robbins Geller Rudman & Dowd LLP
655 West Broadway
Suite 1900
San Diego, CA 92101

David A. Rosenfeld, Esq.
Samuel H. Rudman, Esq.
Robbins Geller Rudman & Dowd LLP
58 South Service Rd.
Suite 200
Melville, NY 11747

Luke O. Brooks, Esq.
Robbins Geller Rudman & Dowd LLP
One Montgomery Street, Suite 1800
San Francisco, CA 94104

Joseph P. Guglielmo, Esq.
Thomas L. Laughlin, IV, Esq.
Scott + Scott, L.L.P.
405 Lexington Ave.
40th Floor
New York, NY 10174

Geoffrey M. Johnson, Esq.
Scott + Scott, L.L.P.
12434 Cedar Rd., Suite 12
Cleveland Heights, OH 44106

Alfred R. Pietrzak, Esq.
Dorothy J. Spenner, Esq.
Owen H. Smith, Esq.
David L. Breau, Esq.
Daniel A. McLaughlin, Esq.
Danny C. Moxley, Esq.
Andrew W. Sters, Esq.
Tom A. Paskowitz, Esq.
Sidley Austin LLP
787 Seventh Ave.
New York, NY 10019

Alison L. MacGregor, Esq.
Kelley Drye & Warren, LLP
101 Park Ave.
New York, NY 10178

Darrell S. Cafasso, Esq.
William B. Monahan, Esq.
Tina G. Barton, Esq.
Sullivan & Cromwell, LLP
125 Broad St.
New York, NY 10004

Robert A. Sacks. Esq.
Sullivan & Cromwell, LLP
1888 Century Park East, Suite 2100
Los Angeles, CA 90067

Richard F. Lubarsky, Esq.
Levi Lubarsky & Feigenbaum LLP
1185 Avenue of the Americas
17th Floor
New York, NY 10036

Rebecca L. Butcher, Esq.
Landis Rath & Cobb LLP
919 Market St., Suite 1800
Wilmington, DE 19801