UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————— x

FORT WORTH EMPLOYEES'       :   Civil Action No. 1:09-cv-03701-JPO-JCF
RETIREMENT FUND, On Behalf of Itself and :
All Others Similarly Situated,   :   CLASS ACTION
                     :
        Plaintiff,   :   PLAINTIFFS' MEMORANDUM OF LAW
                     :   IN SUPPORT OF MOTION FOR
    vs.              :   PRELIMINARY APPROVAL OF
                     :   SETTLEMENT
J.P. MORGAN CHASE & CO., et al.,   :
                     :
        Defendants.   :
                     :

———————————————— x

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................1

II. SUMMARY OF THE ACTION ............................................................................3

III. PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED ..................6

    A. Terms of the Settlement .............................................................................6

    B. The Standards for Reviewing a Proposed Settlement for Preliminary Approval ....................................................................................................8

    C. Preliminary Approval of the Settlement Should Be Granted.................9

        1. The Complexity, Expense, and Likely Duration of the Litigation Supports Approval of the Settlement.............................9

        2. The Reaction of the Class to the Settlement .............................11

        3. The Stage of the Proceedings...................................................11

        4. The Risk of Establishing Liability and Damages .....................11

        5. The Risks of Maintaining the Class Action Through Trial........14

        6. The Ability of Defendants to Withstand a Greater Judgment....14

        7. The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation.........................................................15

    D. The Proposed Plan of Allocation and Claim Form Permit Class Members to Submit Claims for Recovery...................................................16

IV. THE PROPOSED FORM AND METHOD OF CLASS NOTICE AND THE FORM OF THE PROOF OF CLAIM ARE APPROPRIATE...........................................17

    A. The Scope of the Notice Program Is Adequate......................................17

    B. The Proposed Form of Notice Comports with the Requirements of Due Process, the Private Securities Litigation Reform Act of 1995 and Rule 23 and Is the Same or Similar to the Form(s) of Notice Routinely Approved by Courts in This Jurisdiction ................................................18

V. PROPOSED SCHEDULE OF SETTLEMENT EVENTS ...............................20

VI. CONCLUSION.................................................................................................21

# TABLE OF AUTHORITIES

## CASES

*Allen v. Dairy Farmers of Am., Inc.*,
No. 5:09-cv-230, 2011 U.S. Dist. LEXIS 48479
(D. Vt. May 4, 2011) ...........................................................................................................8, 9

*Charron v. Wiener*,
731 F.3d 241 (2d Cir. 2013) ....................................................................................................14

*Chatelain v. Prudential-Bache Sec.*,
805 F. Supp. 209 (S.D.N.Y. 1992) ...........................................................................................9

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001) ......................................................................................................14

*Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) ............................................................................................7, 9, 11

*Hicks v. Morgan Stanley & Co.*,
No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890
(S.D.N.Y. Oct. 24, 2005) .........................................................................................................10

*In re "Agent Orange" Prod. Liab. Litig.*,
597 F. Supp. 740 (E.D.N.Y. 1984),
*aff'd*, 818 F.2d 145 (2d Cir. 1987) ..........................................................................................15

*In re Alloy, Inc., Sec. Litig.*,
No. 03 Civ. 1597 (WHP), 2004 U.S. Dist. LEXIS 24129
(S.D.N.Y. Dec. 2, 2004) ..........................................................................................................10

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
MDL No. 1500, 2006 U.S. Dist. LEXIS 17588
(S.D.N.Y. Apr. 6, 2006) .....................................................................................................10, 15

*In re Currency Conversion Fee Antitrust Litig.*,
MDL No. 1409, 2006 U.S. Dist. LEXIS 81440
(S.D.N.Y. Nov. 8, 2006) ......................................................................................................8, 16

*In re Giant Interactive Grp., Inc.*,
279 F.R.D. 151 (S.D.N.Y. 2011) .............................................................................................13

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ......................................................................................11, 15

*In re Indep. Energy Holdings PLC Sec. Litig.*,
   No. 00 Civ. 6689 (SAS), 2003 U.S. Dist. LEXIS 17090
   (S.D.N.Y. Sept. 29, 2003) ...........................................................................15

*In re Luxottica Grp. S.p.A., Sec. Litig.*,
   No. CV 01-3285 (JBW)(MDG), 2005 U.S. Dist. LEXIS 27765
   (E.D.N.Y. Nov. 15, 2005) ............................................................................17

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
   No. 02 MDL 1484 (JFK), 2007 U.S. Dist. LEXIS 9450
   (S.D.N.Y. Feb. 1, 2007) ..............................................................................17

*In re Michael Milken & Assocs. Sec. Litig.*,
   150 F.R.D. 57 (S.D.N.Y. 1993) ......................................................................9

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
   176 F.R.D. 99 (S.D.N.Y. 1997) ......................................................................8

*In re Platinum & Palladium Commodities Litig.*,
   No. 10cv3617, 2014 U.S. Dist. LEXIS 96457
   (S.D.N.Y. July 15, 2014) ............................................................................7, 8

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   163 F.R.D. 200 (S.D.N.Y. 1995) ...................................................................16

*In re Prudential Sec. Ltd. P'ships Litig.*,
   164 F.R.D. 362 (S.D.N.Y.), *aff'd sub nom.*
   *Toland v. Prudential Sec. P'ship Litig.*, 107 F.3d 3 (2d Cir. 1996) ..................18

*In re Stock Exchs. Options Trading Antitrust Litig.*,
   No. 99 Civ. 0962 (RCC), 2006 U.S. Dist. LEXIS 87825
   (S.D.N.Y. Dec. 4, 2006) ...............................................................................19

*In re Vitamin C Antitrust Litig.*,
   No. 06-MD-1738 (BMC) (JO), 2012 U.S. Dist. LEXIS 152275
   (E.D.N.Y. Oct. 23, 2012) .............................................................................14

*In re Warner Chilcott Ltd. Sec. Litig.*,
   No. 06 Civ. 11515 (WHP), 2008 U.S. Dist. LEXIS 99840
   (S.D.N.Y. Nov. 20, 2008) ..............................................................................7

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
   693 F.3d 145 (2d Cir. 2012) ...........................................................................4

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972).................................................................15

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005).................................................................8

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982).................................................................19

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
    §77...............................................................................................12, 13, 17
    §77k..............................................................................................3
    §77k(b)(3)......................................................................................14
    §77l..............................................................................................3
    §77o..............................................................................................3
    §77z-1(a)(7)....................................................................................2, 19
    §78u-4(a)(7)(A)-(F).........................................................................20

Federal Rules of Civil Procedure
    Rule 23.....................................................................................2, 17, 18, 19
    Rule 23(a)......................................................................................16
    Rule 23(b)(3)..................................................................................16
    Rule 23(c)(1)(C)..............................................................................14

## SECONDARY AUTHORITIES

*Manual for Complex Litigation* (3d ed. 1995)
    §30.41............................................................................................8

Lead Plaintiffs and Class Representatives, the Laborers Pension Trust Fund for Northern California and Construction Laborers Pension Trust for Southern California (together, "Plaintiffs"), respectfully submit this memorandum of law in support of their motion for: (i) preliminary approval of the proposed Settlement between Plaintiffs, on behalf of the Class, as defined below, and Defendants J.P. Morgan Securities, Inc. (now known as J.P. Morgan Securities LLC), J.P. Morgan Acceptance Corporation I, Brian Bernard, Louis Schioppo Jr., Christine E. Cole, David M. Duzyk, William King, and Edwin F. McMichael (collectively, "Defendants"); (ii) approval of the form and manner of the settlement notice to Class Members; and (iii) the scheduling of a hearing ("Settlement Hearing") on final approval of the Settlement, proposed Plan of Allocation and Lead Counsel's motion for an award of attorneys' fees and Litigation Expenses. The requested relief is embodied in the Settling Parties' agreed-upon form of Proposed Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order") and exhibits thereto, which are attached to the accompanying Notice of Motion.

## I.    INTRODUCTION

Following extensive litigation and settlement negotiations, Plaintiffs, on behalf of the Class, and Defendants (together, the "Settling Parties" or "Parties") have reached an agreement to resolve this securities class action for $388,000,000.00 (the "Settlement Amount"). The terms of the Settlement are set forth in the Stipulation and Agreement of Settlement ("Stipulation"), filed simultaneously herewith.[1]

The Parties reached this Settlement after six years of hard-fought litigation and extensive negotiations. By the time the Settlement was reached, Plaintiffs were fully informed about the

---

[1]    Unless otherwise stated or defined, all capitalized terms used herein shall have the meanings provided in the Stipulation.

strengths and weaknesses of their case. Indeed, this result was possible only after the filing of multiple class action complaints; adjudication of several rounds of motions to dismiss and supplemental briefing involving rapidly-evolving areas of law with little or no precedent; the production of over 80 million pages of documents; 42 depositions; significant discovery motion practice; full class certification briefing; and engagement with multiple experts on issues such as negative causation, falsity, materiality, damages, mortgage loan underwriting, and statistics.

Plaintiffs and Lead Counsel – based upon their experience, evaluation of the facts and applicable law, their recognition of the Settlement Amount, and the risk and expense of continued litigation – submit that the proposed Settlement is fair, reasonable and adequate. The Settlement constitutes an excellent result, and is in the best interests of the Class.

Accordingly, Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement so that notice may be provided to the Class. Plaintiffs request that this Court enter the Settling Parties' agreed-upon Preliminary Approval Order, submitted herewith as Exhibit A to the Stipulation, which among other things, will:

1.      preliminarily approve the Settlement on the terms set forth in the Stipulation;

2.      approve the form and content of the Notice of Pendency of Class Action and Proposed Settlement and Settlement Hearing ("Notice") and Summary Notice attached as Exhibits A-1 and A-3 to the Stipulation, respectively;

3.      find that the procedures for distribution of the Notice and publication of the Summary Notice in the manner and form set forth in the Preliminary Approval Order constitute the best notice practicable under the circumstances, and comply with the notice requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and §27(a)(7) of the Securities Act of 1933, 15 U.S.C. §77z-1(a)(7), as amended by the Private Securities Litigation Reform Act of 1995; and

4.      set a schedule and procedures for: disseminating the Notice and publication of the Summary Notice; requesting exclusion from the Class; objecting to the Settlement, the Plan of Allocation or Lead Counsel's application for attorneys' fees and Litigation Expenses; submitting papers in support of final approval of the Settlement; and the Settlement Hearing.

## II.      SUMMARY OF THE ACTION

On March 11, 2009, a class action complaint was filed against Defendants and certain other defendants in the Supreme Court of the State of New York, County of New York, Index No. 09-600767, on behalf of all persons or entities who purchased certificates pursuant or traceable to an offering of certificates in any of 11 mortgage-backed securities issued by J.P. Morgan, asserting certain claims under the Securities Act of 1933 (the "Securities Act").[2] On April 10, 2009, the defendants removed the Action to the United States District Court, Southern District of New York (Civil Action No. 09-cv-03701).

On March 10, 2010, the Court appointed the Employees' Retirement System of the Government of the Virgin Islands ("USVI GERS") as the lead plaintiff and appointed its choice of counsel, Robbins Geller Rudman & Dowd LLP (f/k/a Coughlin Stoia Geller Rudman & Robbins LLP) as Lead Counsel.

USVI GERS filed the Second Amended Complaint for Violation of §§11, 12 and 15 of the Securities Act of 1933 ("Complaint") on July 8, 2010. The Complaint alleges that the registration statement and prospectus supplements (the "Offering Documents") relating to the Certificates

---

[2]    The 11 trusts that were the subject of the initial complaint are: J.P. Morgan Alternative Loan Trust 2007-A2; J.P. Morgan Alternative Loan Trust 2007-S1; J.P. Morgan Mortgage Acquisition Trust 2007-CH3; J.P. Morgan Mortgage Acquisition Trust 2007-CH4; J.P. Morgan Mortgage Acquisition Trust 2007-CH5; J.P. Morgan Mortgage Trust Mortgage 2007-A3; J.P. Morgan Mortgage Trust Mortgage 2007-A4; J.P. Morgan Mortgage Trust Mortgage 2007-A5; J.P. Morgan Mortgage Trust Mortgage 2007-A6; J.P. Morgan Mortgage Trust Mortgage 2007-S2; and J.P. Morgan Mortgage Trust Mortgage 2007-S3.

- 3 -

contained misrepresentations and omitted material facts concerning: (i) adherence to underwriting standards governing the loans supporting the Certificates; (ii) the process used to value the properties that secured the loans supporting the Certificates; and (iii) the true loan-to-value ratios of the loans securing the Certificates.

Defendants moved to dismiss the Complaint on August 9, 2010, which motion was denied in part and granted in part by the Court on March 30, 2011. The Court granted, *inter alia*, Defendants' motion to dismiss those claims related to each trust in which the lead plaintiff had not directly purchased for lack of standing. The March 30, 2011 order was subsequently amended on May 9, 2011. Defendants filed an answer to the remaining claims in the Complaint on June 14, 2011.

On May 15, 2012, the Court granted USVI GERS's motion to withdraw as lead plaintiff and re-opened the lead plaintiff application period. The Court appointed Plaintiffs and approved Plaintiffs' selection of Robbins Geller Rudman & Dowd LLP as Lead Counsel on July 12, 2012.

Following the Second Circuit's decision in *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012) ("*NECA-IBEW*"), on October 1, 2012, Plaintiffs moved for reconsideration of the Court's May 9, 2011 order. Defendants filed an opposition to Plaintiffs' motion for reconsideration and a motion to stay the proceedings pending the Supreme Court's review of *NECA-IBEW* on November 2, 2012. On November 29, 2012, the Court denied Defendants' motion to stay. On January 4, 2013, the Court granted Plaintiffs' motion for reconsideration in light of *NECA-IBEW* and reinstated claims related to the previously-dismissed trusts.

Plaintiffs moved for class certification on September 27, 2013, which was granted in part on September 30, 2014. The Court certified a class investors for liability purposes who, prior to March 12, 2009, purchased or otherwise acquired certificates issued by the nine trusts which are subject to

- 4 -

this Settlement: J.P. Morgan Alternative Loan Trust 2007-A2; J.P. Morgan Alternative Loan Trust 2007-S1; J.P. Morgan Mortgage Acquisition Trust 2007-CH3; J.P. Morgan Mortgage Acquisition Trust 2007-CH4; J.P. Morgan Mortgage Acquisition Trust 2007-CH5; J.P. Morgan Mortgage Trust Mortgage 2007-A3; J.P. Morgan Mortgage Trust Mortgage 2007-A4; J.P. Morgan Mortgage Trust Mortgage 2007-S2; and J.P. Morgan Mortgage Trust Mortgage 2007-S3 (the "Class").[3]

Between September 2013 and June 2015, the Settling Parties engaged in substantial and unusually complex fact discovery. In total, Lead Counsel took or defended over 40 depositions, issued approximately 75 document subpoenas, and obtained over 80 million pages of documents from Defendants and third parties for analysis. The Settling Parties also engaged experts to opine on falsity, materiality, damages, loan re-underwriting, due diligence and causation.

In an effort to resolve the Action, the Settling Parties attended two in-person mediations with the Hon. Daniel Weinstein (Ret.) on August 18, 2011 and April 30, 2015. The parties also exchanged mediation statements on April 11, 2013. After the second in-person mediation, the parties engaged in numerous arm's-length negotiations regarding a potential settlement of the Action. On June 4, 2015, after receipt of a mediator's recommendation, the parties reached an agreement-in-principle to resolve the Action, subject to satisfaction of certain conditions and negotiation of the Stipulation. The Parties are pleased to present the Stipulation, dated as of July 17, 2015, to the Court for preliminary approval.

---

[3] Claims relating to JPMMT 2007-A5 and JPMMT 2007-A6 were not included in Plaintiffs' Motion for Class Certification and are not included in the Settlement.

## III.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED

### A.    Terms of the Settlement

The Settlement set forth in the Stipulation resolves the claims of the Class against Defendants.  The Stipulation provides that Defendants will pay or cause to be paid $388 million in cash ("Settlement Amount"), inclusive of attorneys' fees and costs.  Within 10 days of the entry of the Preliminary Approval Order, Defendants will wire transfer the entire $388 million Settlement Amount to the Escrow Agent.  Stipulation, ¶24.

The recovery to individual Class Members will be determined by statutory formula and will depend on several variables, including: the aggregate value of the Recognized Claims represented by valid and acceptable Proof of Claim and Release Forms ("Claim Form" or "Proof of Claim Form"); when the Class Member's Certificates were purchased or acquired and the price at the time of purchase; any principal amounts received by the Class Member; whether the Certificates were sold, and if so, when they were sold and for how much; and, if held by the Class Member on the applicable date of suit for that Certificate, the value of the Certificate on that date.  *See* Stipulation, Exhibit A-1, ¶3.

The Notice explains the terms of the Settlement, including that the Net Settlement Fund will be distributed to eligible Class Members who submit valid and timely Proof of Claim Form pursuant to the proposed Plan of Allocation included in the Notice and subject to this Court's approval; there will be no reversion to Defendants.  *See generally* Stipulation, Exhibit A-1. The Notice also advises Class Members of, among other information: (i) Lead Counsel's application for attorneys' fees and expenses; (ii) the procedures for objecting to the Settlement, the Plan of Allocation, or the request for attorneys' fees and expenses, and (iii) the date, time and location of the Settlement Hearing.  *See id.*, ¶¶11, 38, 41-42, 44-46.

If the Court grants preliminary approval, the Claims Administrator will mail the Notice and Proof of Claim Form (Exhibits A-1 and A-2 to the Stipulation) to Class Members who can be identified with reasonable effort. Additionally, the Claims Administrator will cause the Summary Notice (Exhibit A-3 to the Stipulation) to be published once in the *Investor's Business Daily* and once over a national newswire service. *See* Stipulation, Exhibit A, ¶6.

The proposed Settlement is an excellent result for the Class. It provides a significant recovery in a case where Plaintiffs had completed merits discovery and were in a strong position to judge the strengths and weaknesses of their case. The $388 million recovery is certainly within the range of what would be determined to be fair, reasonable, and adequate. Indeed, the Settlement provides a higher recovery as a percentage of the Certificates' initial face value than in any other RMBS class action settlement of which Lead Counsel is aware. An analysis of the *Grinnell* factors (*Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)), set forth in §III.C., below, which apply to a court's determination of final approval of a settlement, also supports preliminary approval of this Settlement. *See also In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515 (WHP), 2008 U.S. Dist. LEXIS 99840, at *4 (S.D.N.Y. Nov. 20, 2008) ("Although a complete analysis of [the *Grinnell*] factors is required for final approval, at the preliminary approval stage, 'the Court need only find that the proposed settlement fits "within the range of possible approval"' to proceed.");[4] *In re Platinum & Palladium Commodities Litig.*, No. 10cv3617, 2014 U.S. Dist. LEXIS 96457, at *38 (S.D.N.Y. July 15, 2014) ("At preliminary approval, it is not necessary to exhaustively consider the factors applicable to final approval.").

---

[4] Citations and footnotes are omitted and emphasis is added unless otherwise noted.

## B.	The Standards for Reviewing a Proposed Settlement for Preliminary Approval

Once a proposed settlement is reached, "a court must determine whether the terms of the proposed settlement warrant preliminary approval.  In other words, the court must make 'a preliminary evaluation' as to whether the settlement is fair, reasonable and adequate."  *In re Currency Conversion Fee Antitrust Litig.*, MDL No. 1409, 2006 U.S. Dist. LEXIS 81440, at *13 (S.D.N.Y. Nov. 8, 2006); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("*NASDAQ*") ("Preliminary approval of a proposed settlement is the first in a two-step process required before a class action may be settled. . . .  In considering preliminary approval, courts make a preliminary evaluation of the fairness of the settlement, prior to notice.").  "In determining whether to grant preliminary approval, the court starts with the proposition that 'there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions.'"  *Allen v. Dairy Farmers of Am., Inc.*, No. 5:09-cv-230, 2011 U.S. Dist. LEXIS 48479, at *9 (D. Vt. May 4, 2011).

Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, and falls within the range of approval, preliminary approval is generally granted.  *See NASDAQ*, 176 F.R.D. at 102 (citing *Manual for Complex Litigation* §30.41 (3d ed. 1995)); *Platinum*, 2014 U.S. Dist. LEXIS 96457, at *36 ("Preliminary approval, at issue here, 'is at most a determination that there is what might be termed "probable cause" to submit the proposal to class members and hold a full-scale hearing as to its fairness.'").  "Once preliminary approval is bestowed, the second step of the process ensues; notice is given to the class members of a hearing, at which time class members and the settling parties may be heard with respect to final court approval."  *NASDAQ*, 176 F.R.D. at 102.

- 8 -

"Preliminary approval is merely the first step in a multi-step process in which the . . . Settlement will be scrutinized by both the court and class members." *Allen*, 2011 U.S. Dist. LEXIS 48479, at *10. "It deprives no party or non-party of any procedural or substantive rights, and provides a mechanism through which class members who object to the . . . Settlement can voice those objections." *Id*. A strong initial presumption of fairness attaches to the proposed settlement if, as here, the settlement is reached by experienced counsel after arm's-length negotiations, and courts should accord great weight to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation. *See In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 65 (S.D.N.Y. 1993); *Chatelain v. Prudential-Bache Sec.*, 805 F. Supp. 209, 212 (S.D.N.Y. 1992).

### C. Preliminary Approval of the Settlement Should Be Granted

The Second Circuit has identified nine factors that courts should consider in deciding whether to grant final approval of a class action settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463. For the following reasons, each of the applicable *Grinnell* factors supports preliminary approval of the Settlement.

### 1. The Complexity, Expense, and Likely Duration of the Litigation Supports Approval of the Settlement

Courts have consistently recognized the complexity, expense, and likely duration of the litigation as critical factors in evaluating the reasonableness of a settlement, especially where the

settlement being evaluated is a securities class action. *See, e.g.*, *Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890, at *6 (S.D.N.Y. Oct. 24, 2005); *In re Alloy, Inc., Sec. Litig.*, No. 03 Civ. 1597 (WHP), 2004 U.S. Dist. LEXIS 24129, at *6 (S.D.N.Y. Dec. 2, 2004) (approving settlement and noting that the action involved complex securities issues "that were likely to be litigated aggressively, at substantial expense to all parties"); *see also In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, MDL No. 1500, 2006 U.S. Dist. LEXIS 17588, at *31 (S.D.N.Y. Apr. 6, 2006) (due to their "notorious complexity," securities class actions often settle to "circumvent[] the difficulty and uncertainty inherent in long, costly trials").

This case is a testament to the complexity, expense and duration of securities class actions, particularly those involving RMBS. The Action was removed to this Court in April 2009, more than six years ago. In the intervening years, Plaintiffs advanced numerous complex legal and factual issues under the federal securities laws, requiring extensive motion practice, fact and expert discovery, and deposition testimony. Discovery by itself was a massive undertaking, involving the production of over 80 million pages of documents and 42 depositions. Still, the Class faced substantial risk in establishing liability, which required extensive, complex expert testimony. The Class also risked summary dismissal at the summary judgment stage. Assuming Plaintiffs prevailed at summary judgment, the eventual trial would have lasted several weeks and been very complicated for jurors, in addition to being very expensive for the Class. An appeal would undoubtedly have followed, likely taking years to complete and incurring additional expense for the Class, regardless of the outcome. Accordingly, this factor weighs strongly in favor of preliminary approval of the proposed Settlement.

### 2.     The Reaction of the Class to the Settlement

Plaintiffs have participated throughout the prosecution of the case and were actively involved in the decision to enter into the Settlement.  Notice regarding the Settlement has not yet been mailed or otherwise distributed. In the event any objections are received after notice is disseminated, they will be addressed by Lead Counsel in connection with Plaintiffs' motion for final approval of the Settlement.

### 3.     The Stage of the Proceedings

The volume and substance of Plaintiffs' and Lead Counsel's knowledge of the merits and potential weaknesses of the claims alleged are unquestionably adequate to support the Settlement. This knowledge is based, first and foremost, on the fact that merits discovery was completed and expert discovery was well underway at the time the proposed Settlement was reached.  The resultant accumulation of information permitted Plaintiffs and Lead Counsel to intelligently weigh the strengths and weaknesses of their case and to engage in effective settlement discussions with Defendants.  *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004) ("the question is whether the parties had adequate information about their claims").  This factor strongly supports preliminary approval of the Settlement.

### 4.     The Risk of Establishing Liability and Damages

In assessing the Settlement, the Court should balance the benefits afforded the Class, including the immediacy and certainty of a significant recovery, against the risk of trial.  *See Grinnell*, 495 F.2d at 463.  Although Plaintiffs and Lead Counsel believe that the claims asserted in the Action are meritorious, continued litigation against Defendants posed substantial risks that made any recovery uncertain.  From the outset, Lead Counsel and Plaintiffs appreciated the unique and significant risks inherent in this litigation.  At the time of the initial filing, there was little established

- 11 -

precedent for RMBS litigation, and no court had sustained claims under the federal securities laws for purchasers of RMBS securities. Indeed, even six years later, very little precedent has been established for summary judgment in RMBS actions, not to mention for trial and subsequent appeals. This lack of precedent substantially increases the uncertainty as to whether Plaintiffs would ultimately succeed in persuading the Court that an issue of fact existed at summary judgment and how the jury would react to Plaintiffs' arguments at trial.

Further, in order to prove their case at trial, Plaintiffs would need to rely extensively on several expert witnesses for analysis of key issues in the Action, such as: (i) whether loans supporting the Certificates were underwritten in accordance with stated guidelines; (ii) whether the Certificates' performance could be attributed to Defendants' false statements; and (iii) how the Plaintiffs' damages should be calculated. Each expert's testimony would be critical to demonstrating the validity of Plaintiffs' claims to the jury. Thus, Plaintiffs' case was particularly susceptible to a danger inherent in reliance on expert witness testimony, namely that the experts will be subject to *Daubert* challenge. If, for some reason, the Court determined that one of Plaintiffs' experts should be excluded from testifying at trial, Plaintiffs' case would become much more difficult to prove.

Even assuming that Plaintiffs prevailed at trial in establishing the presence of material untrue statements and omissions in the Offering Documents, Plaintiffs would still have to contend with Defendants' affirmative defenses. For instance, Defendants have articulated a "negative causation" defense that may have been accepted by the jury and, if so, significantly decreased or even defeated Plaintiffs' damages claims. Section 11 provides a statutory formula for damages, based on the lesser of the difference between the purchase price of the security and (i) the value of the security on the date the lawsuit was filed; or (ii) the price at which the security was disposed. 15 U.S.C. §77 k(e).

However, Section 11 damages are also subject to reduction or elimination if the jury finds that some or all of the losses were attributable to causes other than the misstatements or omissions ("negative causation"). *Id.* Throughout the litigation process, Defendants have maintained that the poor performance of the Certificates was driven not by the quality of the loans, but by the collapse of the overall economy – *e.g.*, by falling housing prices, increasing unemployment rates, *etc.* Although Plaintiffs believe they have marshaled sufficient evidence to defeat Defendants' argument, Plaintiffs would still need to convince a jury that the financial crisis was not the cause of their losses. At a minimum, this would require extensive expert testimony. *See, e.g.*, *In re Giant Interactive Grp., Inc.*, 279 F.R.D. 151, 161-62 (S.D.N.Y. 2011) (approving settlement where the litigation risks included a "credible defense of 'negative causation'").

Plaintiffs would face other affirmative defenses at trial as well. For example, Defendants have consistently argued that the Offerings were issued after housing prices in the U.S. had begun to decline and mortgage delinquencies had begun to increase, and that these trends were disclosed in the Offering Documents. Defendants contend that for this and other reasons, Plaintiffs had actual knowledge about the alleged facts giving rise to their claims when they bought the Certificates. If the jury agreed with Defendants that Plaintiffs had actual knowledge, Plaintiffs' entire case would be lost. *See* 15 U.S.C. §77 k(a).

Defendants have also maintained a "due diligence" defense throughout the litigation, claiming that they had a reasonable process in place to ensure that information provided in the Offering Documents about the loans supporting the Certificates was true and correct and, therefore, reasonably believed that the representations in the Offering Documents were accurate. While Plaintiffs believe that this defense lacks merit, they would also need to convince a jury of that fact, a complicated and uncertain undertaking. If the jury determined that Defendants had undertaken

- 13 -

reasonable due diligence in purchasing and securitizing the loans supporting the Certificates, Plaintiffs would be unable to recover for their claims. *See* 15 U.S.C. §77k(b)(3).

The proposed Settlement of $388 million, when viewed in the context of these risks and the uncertainties involved with any litigation, is extremely beneficial to the Class.

### 5. The Risks of Maintaining the Class Action Through Trial

While the Class was certified for liability purposes by order dated September 30, 2014, certification can be reviewed and modified at any time. Thus, there is always a risk that this Action, or particular claims, might not be maintained as a class through trial. *See* Dkt. No. 318 at 43 ("Pursuant to Rule 23(c)(1)(C), this class certification order 'may be altered or amended before final judgment.'"); *see also Charron v. Wiener*, 731 F.3d 241, 249 (2d Cir. 2013) ("[W]e cannot find that the district court abused its discretion in finding that the class faced significant risks of decertification, that decertification would drastically reduce the chances of any member of the class achieving meaningful relief, and that the litigation risks attendant to these possibilities weighed heavily in favor of the fairness of a settlement."). Thus, this factor weighs in favor of preliminary approval of the Settlement.

### 6. The Ability of Defendants to Withstand a Greater Judgment

A court may also consider a defendant's ability to withstand a judgment greater than that secured by settlement, although it is not generally one of the determining factors. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001). Courts generally do not find the ability of a defendant to withstand a greater judgment to be an impediment to settlement when the other factors favor the settlement, and in fact, the ability of defendants to pay more money does not render a settlement unreasonable. *See In re Vitamin C Antitrust Litig.*, No. 06-MD-1738 (BMC) (JO), 2012 U.S. Dist. LEXIS 152275, at *6 (E.D.N.Y. Oct. 23, 2012) (acknowledging that "'in any class action

against a large corporation, the defendant entity is likely to be able to withstand a more substantial

judgment, and . . . this fact alone does not undermine the reasonableness of the instant settlement'").

### 7. The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation

The adequacy of the amount offered in settlement must be judged "not in comparison with

the possible recovery in the best of all possible worlds, but rather in light of the strengths and

weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762

(E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).  The Court need only determine whether the

Settlement falls within a "range of reasonableness" – a range which "recognizes the uncertainties of

law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking

any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 692 (2d Cir. 1972); *see also Global

Crossing*, 225 F.R.D. at 461 (noting that "the certainty of [a] settlement amount has to be judged in

[the] context of the legal and practical obstacles to obtaining a large recovery"); *In re Indep. Energy

Holdings PLC Sec. Litig.*, No. 00 Civ. 6689 (SAS), 2003 U.S. Dist. LEXIS 17090, at *12-*13

(S.D.N.Y. Sept. 29, 2003) (noting few cases tried before a jury result in full amount of damages

claimed).

In addition to absolute monetary value, in considering the reasonableness of the Settlement,

the Court should consider that the Settlement provides for payment to the Class now, rather than a

speculative payment many years down the road.  *See AOL Time Warner*, 2006 U.S. Dist. LEXIS

17588, at *44 (where settlement fund is in escrow earning interest, "the benefit of the Settlement

will . . . be realized far earlier than a hypothetical post-trial recovery").  Here, the Settlement

represents a very good result, especially considering a possible recovery at trial of zero. ***Indeed, the

Settlement is, on a percentage basis, the largest recovery ever achieved in a class action brought

on behalf of RMBS purchasers***.  Thus, "[i]nstead of the lengthy, costly, and uncertain course of

further litigation, the settlement provides a significant and expeditious route to recovery . . . it may be preferable 'to take the bird in the hand instead of the prospective flock in the bush.'" *Currency Conversion*, 2006 U.S. Dist. LEXIS 81440 at *16 (quoting *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 210 (S.D.N.Y. 1995)). Accordingly, this factor weighs in favor of the Court granting preliminary approval.

### D. The Proposed Plan of Allocation and Claim Form Permit Class Members to Submit Claims for Recovery

On September 30, 2014, the Court ruled that this case should proceed as a class action for liability purposes. Accordingly, the Court certified a class of "all persons or entities who, prior to March 12, 2009, purchased or otherwise acquired any Certificates in any of the [nine] Offerings." *See* Dkt. Nos. 318 at 43; 324. In so doing, the Court determined that the Plaintiffs had satisfied the requirements of Rule 23(a) and (b)(3), and that the class action was a superior method for fairly and efficiently resolving the plaintiff investors' claims. That finding remains applicable now, as Plaintiffs, on behalf of the Class, request preliminary approval for the Settlement of those same claims.

Moreover, although the Court in its September 30, 2014 class certification order found that "more specificity" as to how Class-wide damages would be calculated was required (Dkt. No. 318 at 38), the proposed Plan of Allocation does just that. *See generally* Stipulation, Exhibit A-1, Appendix A. In particular, the Plan of Allocation describes precisely how each Class Member may submit a Claim Form specifying (i) when the Class Member's Certificates were purchased or acquired and the price at the time of purchase; (ii) whether the Certificates were sold, and if so, when they were sold and for how much; and (iii) if held by the Class Member on the applicable date of suit for that Certificate, the value of the Certificate on that date. *See id.*, ¶2. This information will be utilized by the Claims Administrator, which has experience in administering RMBS settlements

- 16 -

using this same information, to calculate Class Members' recoveries. Thus, the Plan of Allocation facilitates the Class-wide determination of damages in accordance with Section 11's statutory formula, which provides that damages are based on the lesser of the difference between the purchase price of the security and (i) the value of the security on the date the lawsuit was filed; or (ii) the price at which the security was disposed. *See* 15 U.S.C. §77 k(e). Therefore, the Court should approve the Plan of Allocation as a method for resolving damages on a Class-wide basis.

## IV. THE PROPOSED FORM AND METHOD OF CLASS NOTICE AND THE FORM OF THE PROOF OF CLAIM ARE APPROPRIATE

### A. The Scope of the Notice Program Is Adequate

There are no "rigid rules" that apply when determining the adequacy of notice for a class action settlement. Rather, when measuring the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules, the court should look to its reasonableness. *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 U.S. Dist. LEXIS 9450, at *26 (S.D.N.Y. Feb. 1, 2007). It is clearly established that "[n]otice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members." *Id*. at *27. In fact, notice programs such as the one proposed by Lead Counsel have been approved as adequate under the Due Process Clause and Rule 23 in a multitude of class action settlements. *See, e.g.*, *In re Bear Stearns Mortg. Pass-Through Certificates Litig.*, No. 1:08-cv-08093-LTS, slip op. (S.D.N.Y. Feb. 19, 2015) (Dkt. No. 268 at 4-5) (approving notice program consisting of mailing and summary notice publication in the national edition of *Investor's Business Daily*, *The Wall Street Journal*, and over the PR Newswire); *In re Luxottica Grp. S.p.A., Sec. Litig.*, No. CV 01-3285 (JBW)(MDG), 2005 U.S. Dist. LEXIS 27765, at *5 (E.D.N.Y. Nov. 15, 2005) (approving notice program, consisting of mailing and

- 17 -

summary notice publication in *The Wall Street Journal* and *The New York Times*); *In re Prudential Sec. Ltd. P'ships Litig.*, 164 F.R.D. 362, 368 (S.D.N.Y.) (approving proposed notice and noting mailing of notice to each identifiable class member's last known address is "a procedure that has been given wide-spread approval in other class actions"), *aff'd sub nom. Toland v. Prudential Sec. P'ship Litig.*, 107 F.3d 3 (2d Cir. 1996).

Here, the parties propose disseminating notice by mail and through publication. Through consultation with Defendants' Counsel, Lead Counsel are ensuring that every known avenue for obtaining the identity of Class Members is being utilized to disseminate the Notice by mail. Therefore, it is reasonable to conclude that the Notice will reach the vast majority of the Class Members, is adequate, and should be approved by the Court.

### B. The Proposed Form of Notice Comports with the Requirements of Due Process, the Private Securities Litigation Reform Act of 1995 and Rule 23 and Is the Same or Similar to the Form(s) of Notice Routinely Approved by Courts in This Jurisdiction

As outlined in the agreed-upon form of the proposed Preliminary Approval Order (Exhibit A to the Stipulation), the Claims Administrator will notify Class Members of the Settlement by mailing the Notice and Proof of Claim Form to all Class Members who can be identified with reasonable effort. The Notice will advise Class Members of the essential terms of this Settlement, the Plan of Allocation, and information regarding Lead Counsel's motion for attorneys' fees and expenses. The Notice also will provide specifics on the date, time and place of the Settlement Hearing and set forth the procedures for objecting to the Settlement, the proposed Plan of Allocation or the motion for attorneys' fees and expenses.

In addition to mailing the Notice and Proof of Claim Form, the Claims Administrator will provide for the publication of a Summary Notice in the national edition of *Investor's Business Daily* and once over a national newswire service. Stipulation, Exhibit A, ¶6.

Similar to other notice programs, the form and manner of providing notice to the Class satisfy the requirements of due process, Rule 23, and the PSLRA, 15 U.S.C. §77z-1(a)(7). It is also similar to other notice programs that courts have approved and that have been used successfully in other RMBS class action settlements.[5]

The content of a notice is generally found to be reasonable if "the average class member understands the terms of the proposed settlement and the options provided to class members thereunder." *In re Stock Exchs. Options Trading Antitrust Litig.*, No. 99 Civ. 0962 (RCC), 2006 U.S. Dist. LEXIS 87825, at *22 (S.D.N.Y. Dec. 4, 2006); *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982) (the notice must "'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings'").

Specifically with respect to cases filed under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), notices of settlements must state: (i) the amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share basis; (ii) if the parties do not agree on the average amount of damages per share that would be recoverable in the event plaintiff prevailed, a statement from each party concerning the issue(s) on which the parties disagree; (iii) a statement indicating which parties or counsel intend to make an application for an award of attorneys' fees and costs (including the amount of such fees and costs determined on an average per share basis), and a brief explanation supporting the fees and costs sought; (iv) the

---

[5] *See, e.g.*, *Bear Stearns*, No. 08-cv-8093 (LTS), slip op. (Dkt. No. 268); *In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*, No. 09-CV-2137-KBF, slip op. (S.D.N.Y. Sept. 10, 2014) (Dkt. No. 309); *Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co., Inc.*, No. 08-cv-10841-JSR-JCL, slip op. (S.D.N.Y. Dec. 15, 2011) (Dkt. No. 176); *Pub. Emps.' Ret. Sys. of Miss. v. Goldman Sachs Grp., Inc.*, No. 09-CV-1110 (HB), slip op. (S.D.N.Y. Aug. 13, 2012) (Dkt. No. 141); *Plumbers' & Pipefitters' Local #562 Supplemental Plan & Trust v. J.P. Morgan Acceptance Corp.*, No. 08-cv-1713 (PKC) (WDW), slip op. (E.D.N.Y. May 2, 2014) (Dkt. No. 219).

name, telephone number, and address of one or more representatives of counsel for the plaintiff class who will be reasonably available to answer questions concerning any matter contained in the notice of settlement published or otherwise disseminated to the class; (v) a brief statement explaining the reasons why the parties are proposing the settlement; and (vi) such other information as may be required by the court.  *See* 15 U.S.C. §78u-4(a)(7)(A)-(F).

The proposed Notice contains all of the information required by the PSLRA.  *See generally* Stipulation, Exhibit A-1.  The information is also provided in a format that is accessible to the reader.  In addition, the Notice advises recipients that they have the right to object to any aspect of the Settlement, the Plan of Allocation, or the fee and expense application.  *See id.*, ¶¶45-52. Furthermore, the Notice provides recipients with the contact information for Lead Counsel, Defendants' Counsel, and the Claims Administrator.  *See id.*, ¶¶ 47, 54.  Finally, the proposed format is the same as or similar to those that have been approved by many other courts in this jurisdiction. Lead Counsel therefore respectfully submits that the Court should approve the form of notice.

## V.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS

If the Court grants preliminary approval of the proposed Settlement, the Parties respectfully submit the following procedural schedule for the Court's review:

| Event | Time for Compliance |
|---|---|
| Deadline for commencing the mailing of the Notice and Proof of Claim Form to Class Members (the "Notice Date") | 10 business days after entry of the Preliminary Approval Order |
| Deadline for publishing the Summary Notice in *Investor's Business Daily* and over a national newswire service | 14 calendar days after the Notice Date |
| Posting and serving of memoranda in support of approval of the Settlement and Plan of Allocation, or in support of Lead Counsel's application for an award of attorneys' fees and expenses | 35 calendar days after the Notice Date |

- 20 -

| Event | Time for Compliance |
|---|---|
| Deadline for submitting objections | 50 calendar days after the Notice Date |
| Posting and filing of reply memoranda in further support of the Settlement and Plan of Allocation, or in support of Lead Counsel's application for an award of attorneys' fees and expenses | 65 calendar days after the Notice Date |
| Settlement Hearing | Approximately 100 calendar days after the Notice Date, at the Court's convenience |
| Deadline for filing Proofs of Claim | 120 calendar days after the Notice Date |

## VI. CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court enter the Preliminary Approval Order in connection with the settlement proceedings, which will provide: (i) preliminary approval of the settlement; (ii) approval of the proposed form and manner of notice to Class Members; and (iii) a hearing date and time to consider final approval of the Settlement and Lead Counsel's motion for an award of attorneys' fees and Litigation Expenses.

DATED: July 17, 2015     ROBBINS GELLER RUDMAN
             & DOWD LLP
           DANIEL S. DROSMAN
           LUKE O. BROOKS
           DARRYL J. ALVARADO

             s/ Daniel S. Drosman
            DANIEL S. DROSMAN

           655 West Broadway, Suite 1900
           San Diego, CA 92101
           Telephone: 619/231-1058
           619/231-7423 (fax)

           Lead Counsel for Plaintiff

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 17, 2015, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on July 17, 2015.

s/ Daniel S. Drosman
DANIEL S. DROSMAN

ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail: dand@rgrdlaw.com

# Mailing Information for a Case 1:09-cv-03701-JPO-JCF

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Floyd Abrams**
  fabrams@cahill.com,managingattorney@cahill.com

- **Mario Alba , Jr**
  malba@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com,drosenfeld@rgrdlaw.com

- **Darryl J. Alvarado**
  dalvarado@rgrdlaw.com,nhorstman@rgrdlaw.com

- **Tina Gonzalez Barton**
  bartont@sullcrom.com,s&cmanagingclerk@sullcrom.com

- **David Lionel Breau**
  dbreau@Sidley.com,nyefiling@Sidley.com

- **Luke Orion Brooks**
  lukeb@rgrdlaw.com

- **Rebecca L. Butcher**
  butcher@lrclaw.com

- **Darrell Scott Cafasso**
  cafassod@sullcrom.com,s&cmanagingclerk@sullcrom.com

- **Jarrett Scott Charo**
  jcharo@rgrdlaw.com

- **James J. Coster**
  jcoster@ssbb.com,managingclerk@ssbb.com

- **Daniel S. Drosman**
  ddrosman@rgrdlaw.com,jillk@rgrdlaw.com,E_File_SD@rgrdlaw.com,tholindrake@rgrdlaw.com,kcook@rgrdlaw.com

- **Thomas Edward Egler**
  tome@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Andrew James Ehrlich**
  aehrlich@paulweiss.com

- **Martin Flumenbaum**
  mflumenbaum@paulweiss.com

- **Jonah H. Goldstein**
  jonahg@rgrdlaw.com

- **Joseph Peter Guglielmo**
  jguglielmo@scott-scott.com,edewan@scott-scott.com,tcrockett@scott-scott.com,ichilaia@scott-scott.com,efile@scott-scott.com,aslaughter@scott-scott.com

- **Geoffrey M. Johnson**
  gjohnson@scott-scott.com,edewan@scott-scott.com,efile@scott-scott.com

- **Roberta Ann Kaplan**
  rkaplan@paulweiss.com

- **Justin Evan Klein**
  jklein@ssbb.com,managingclerk@ssbb.com

- **Angel P. Lau**
  alau@rgrdlaw.com

- **Thomas Livezey Laughlin , IV**
  tlaughlin@scott-scott.com,sjacobsen@scott-scott.com,ichilaia@scott-scott.com,efile@scott-scott.com

- **Arthur C. Leahy**
  artl@rgrdlaw.com

- **Nathan R. Lindell**
  nlindell@rgrdlaw.com

- **Alison Leigh MacGregor**
  amacgregor@kelleydrye.com,docketing@kelleydrye.com

- **Daniel Allan McLaughlin**
  dmclaughlin@sidley.com,nyefiling@sidley.com

- **William Brian Monahan**
  monahanw@sullcrom.com,s&cmanagingclerk@sullcrom.com

- **Danny Cameron Moxley**
  cmoxley@sidley.com,nyefiling@sidley.com

- **Michael Patrick Murtagh**
  murtaghm@sullcrom.com,s&cmanagingclerk@sullcrom.com

- **Ivy T. Ngo**
  ingo@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Lucas F. Olts**
  lolts@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Thomas Andrew Paskowitz**
  tpaskowitz@sidley.com,nyefiling@sidley.com

- **Alfred Robert Pietrzak**
  rpietrzak@sidley.com,nyefiling@sidley.com

- **Caroline M Robert**
  crobert@rgrdlaw.com

- **Ashley M Robinson**
  ashleyr@rgrdlaw.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Tammy Lynn Roy**
  troy@cahill.com,ndelutri@cahill.com,mmcloughlin@cahill.com,nmarcantonio@cahill.com,managingattorney@cahill.com

- **Joshua M. Rubins**
  jrubins@ssbb.com

- **Samuel Howard Rudman**
  e_file_ny@rgrdlaw.com,mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Robert Andrew Sacks**
  sacksr@sullcrom.com,s&cmanagingclerk@sullcrom.com

- **Scott H. Saham**
  scotts@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Dorothy Jane Spenner**
  dspenner@sidley.com,nyefiling@sidley.com

- **Hillary B. Stakem**
  hstakem@rgrdlaw.com

- **Andrew W. Stern**
  astern@sidley.com,nyefiling@sidley.com

- **Tobias James Stern**
  tstern@paulweiss.com

- **Susan G. Taylor**
  susant@rgrdlaw.com

- **Carolina Cecilia Torres**
  ctorres@csgrr.com

- **Sarah Penny Windle**
  windls@cahill.com,managingattorney@cahill.com

- **Adam Nelson Zurofsky**
  azurofsky@cahill.com,MMcLoughlin@cahill.com,NMarcantonio@cahill.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)