UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————— x
FORT WORTH EMPLOYEES'             :   Civil Action No. 1:09-cv-03701-JPO-JCF
RETIREMENT FUND, On Behalf of Itself and :
All Others Similarly Situated,    :   CLASS ACTION
                                  :
                      Plaintiff,  :   MEMORANDUM OF LAW IN SUPPORT
                                  :   OF PLAINTIFFS' MOTION FOR FINAL
         vs.                      :   APPROVAL OF CLASS ACTION
                                  :   SETTLEMENT AND PLAN OF
J.P. MORGAN CHASE & CO., et al.,  :   ALLOCATION
                                  :
                      Defendants. :
                                  :
—————————————————————— x

**TABLE OF CONTENTS**

Page

I.      PRELIMINARY STATEMENT ..................................................................................1

II.     PROCEDURAL AND FACTUAL BACKGROUND OF THE SETTLEMENT..............4

III.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND
        ADEQUATE......................................................................................................................5

        A.      Settlements Are Favored and Encouraged ..............................................................5

        B.      The Settlement Is Presumptively Fair.....................................................................6

        C.      The Settlement Meets the Second Circuit Requirements for Approval...................7

                1.      The Complexity, Expense, and Likely Duration of the Litigation
                        Justifies the Settlement ...............................................................................8

                2.      The Reaction of the Class to the Settlement ..............................................11

                3.      The Stage of the Proceedings and Discovery Completed...........................12

                4.      The Risks of Establishing Liability and Damages .....................................13

                5.      The Risks of Maintaining the Class Action Through Trial........................16

                6.      The Ability of the Defendants to Withstand a Greater Judgment..............17

                7.      The Reasonableness of the Settlement in Light of the Best Possible
                        Recovery and the Attendant Risks of Litigation........................................18

IV.     THE NOTICE OF PROPOSED SETTLEMENT SATISFIES DUE PROCESS
        REQUIREMENTS AND IS REASONABLE...................................................................19

V.      THE PLAN OF ALLOCATION IS FAIR AND REASONABLE...................................20

VI.     CONCLUSION................................................................................................................23

# TABLE OF AUTHORITIES

Page

## CASES

*Beecher v. Able*,
   575 F.2d 1010 (2d Cir. 1978)..................................................................................21

*Chatelain v. Prudential-Bache Sec.*,
   805 F. Supp. 209 (S.D.N.Y. 1992) ...........................................................................16

*Chavarria v. N.Y. Airport Serv., LLC*,
   875 F. Supp. 2d 164 (E.D.N.Y. 2012) .......................................................................6

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001)..................................................................................7, 12

*Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)........................................................................... *passim*

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974).................................................................................................19

*Hicks v. Morgan Stanley & Co.*,
   No. 01 Civ. 10071 (RJH), 2005 WL 2757792
   (S.D.N.Y. Oct. 24, 2005) .........................................................................................11

*In re "Agent Orange" Prod. Liab. Litig.*,
   597 F. Supp. 740 (E.D.N.Y. 1984),
   *aff'd*, 818 F.2d 145 (2d Cir. 1987).............................................................................18

*In re Am. Bank Note Holographics*,
   127 F. Supp. 2d 418 (S.D.N.Y. 2001)..................................................................16, 21

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
   No. MDL 1500, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)....................................18

*In re Austrian & German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000),
   *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ................13

*In re Giant Interactive Grp., Inc.*,
   279 F.R.D. 151 (S.D.N.Y. 2011) .........................................................................13, 15

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) .........................................................................8, 12

- ii -

Page

*In re IMAX Sec. Litig.*,
    283 F.R.D. 178 (S.D.N.Y. 2012) ......................................................................8, 14

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
    233 F.R.D. 306 (E.D.N.Y. 2006) ...........................................................6, 7, 11, 21

*In re Metlife Demutualization Litig.*,
    689 F. Supp. 2d 297 (E.D.N.Y. 2010) ....................................................................16

*In re Michael Milken & Assocs. Sec. Litig.*,
    150 F.R.D. 46 (S.D.N.Y. 1993) ..............................................................................13

*In re Michael Milken & Assocs. Sec. Litig.*,
    150 F.R.D. 57 (S.D.N.Y. 1993) ..............................................................................18

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y.),
    *aff'd*, 117 F.3d 721 (2d Cir. 1997)......................................................7, 11, 18, 21

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
    No. 06 Civ. 5173 (RPP), 2008 WL 1956267 (S.D.N.Y. May 1, 2008) ...................17

*In re Veeco Instruments Inc. Sec. Litig.*,
    No. 05 MDL 0165 (CM), 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ........................ *passim*

*In re Wachovia Equity Sec. Litig.*,
    No. 08 Civ. 6171(RJS), 2012 WL 2774969 (S.D.N.Y. June 12, 2012)...................17

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004)....................................................................................17

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005).....................................................................16

*Lentell v. Merrill Lynch & Co.*,
    396 F.3d 161 (2d Cir. 2005)....................................................................................15

*Lewis v. Newman*,
    59 F.R.D. 525 (S.D.N.Y. 1973) ..............................................................................14

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002).....................................................................22

Page

*Milstein v. Huck,*
  600 F. Supp. 254 (E.D.N.Y. 1984) .........................................................................................8

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.,*
  693 F.3d 145 (2d Cir. 2012).....................................................................................................9

*Newman v. Stein,*
  464 F.2d 689 (2d Cir. 1972)...............................................................................................6, 18

*Strougo v. Bassini,*
  258 F. Supp. 2d 254 (S.D.N.Y. 2003)................................................................................8, 11

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.,*
  No. 01-CV-11814 (MP), 2004 WL 1087261 (S.D.N.Y. May 14, 2004)................................13

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
  396 F.3d 96 (2d Cir. 2005)...........................................................................................5, 6, 20

*Weinberger v. Kendrick,*
  698 F.2d 61 (2d Cir. 1982)......................................................................................................6

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
  §77k.............................................................................................................................14, 15, 22
  §77k(e) .......................................................................................................................4, 15, 21
  §77z-1 ..............................................................................................................................19, 20

Federal Rules of Civil Procedure
  Rule 23 .....................................................................................................................................1
  Rule 23(c)(2) ..........................................................................................................................19
  Rule 23(c)(2)(B)......................................................................................................................19
  Rule 23(e).................................................................................................................................20

## SECONDARY AUTHORITIES

4 Alba Conte & Herbert B. Newberg,
  *Newberg on Class Actions* (4th ed. 2002)
  §11.45.......................................................................................................................................12

1073032_1

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Lead Plaintiffs and Class Representatives, the Laborers Pension Trust Fund for Northern California and Construction Laborers Pension Trust for Southern California (together, "Plaintiffs"), respectfully move this Court for orders approving both the proposed settlement (the "Settlement") of this class action (the "Action") and the proposed Plan of Allocation of the Net Settlement Fund.[1]

## I.    PRELIMINARY STATEMENT

On August 13, 2015, J.P. Morgan Securities, Inc. (now known as J.P. Morgan Securities LLC), on behalf of itself and J.P. Morgan Acceptance Corporation I, Brian Bernard, Louis Schioppo Jr., Christine E. Cole, David M. Duzyk, William King, and Edwin F. McMichael (collectively, "Defendants"), paid $388,000,000 in cash into an interest-bearing escrow account maintained on behalf of the Class in accordance with the terms of the Stipulation. This Settlement represents an excellent recovery in a residential mortgage-backed securities ("RMBS") case; indeed, *the Settlement is, on a percentage-of-face value basis, the largest recovery ever achieved in an RMBS purchaser class action*. *See* Declaration of Luke O. Brooks in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation and Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Plaintiffs' Expenses Pursuant to 15 U.S.C. §77z-1(a)(4) ("Lead Counsel Decl."), ¶4, filed concurrently herewith.

The Settlement is notable, not only for its record-breaking monetary recovery, but for the significant legal hurdles that Lead Counsel had to overcome in the Action over more than five years of litigation. At the time the parties agreed to the Settlement, the Action had reached an advanced stage, and the parties were fully informed about the strengths and weaknesses of their cases. Indeed, this result

---

[1]    Unless otherwise stated or defined, all capitalized terms used herein shall have the meanings provided in the Stipulation and Agreement of Settlement (the "Stipulation"), dated as of July 17, 2015. Dkt. No. 361.

was achieved only after (i) the filing of multiple class action complaints; (ii) briefing of several rounds of motions to dismiss and supplemental briefing involving rapidly-evolving areas of law with little or no precedent; (iii) reinstating previously-dismissed offerings, thereby expanding the class of investors eligible to recover; (iv) obtaining a class certification order that properly certified a broadly-defined plaintiff class; (v) the production of nearly 80 million pages of documents; (vi) 42 fact and expert witness depositions; (vii) significant discovery motion practice; (viii) engagement with multiple experts on key issues such as negative causation, falsity, materiality, damages, mortgage loan underwriting, and statistics; and (ix) extensive arm's-length settlement negotiations conducted under the auspices of the Honorable Daniel H. Weinstein (Ret.), a former judge and highly-respected mediator with substantial experience mediating RMBS matters. *See* Lead Counsel Decl., ¶¶4, 107.

Had the Settlement not been reached, Plaintiffs would have faced a myriad of additional factual and legal challenges during the process of achieving a final recovery for the Class. For example, Plaintiffs would have needed to defeat Defendants' challenges to Plaintiffs' experts and inevitable summary judgment motions, prove Defendants' liability and the amount of recoverable damages at trial, and subsequently defeat any of Defendants' appeals. In addition to the burden of proving the falsity and materiality of Defendants' statements, Plaintiffs also faced numerous affirmative defenses, including "negative causation," "actual knowledge," and "due diligence." In light of the scarcity of precedent in RMBS cases, all of these events and arguments carried with them a high level of uncertainty and could have resulted in dismissal of Plaintiffs' claims or a reduction of recoverable damages. The Settlement eliminates these risks and uncertainties and provides a definite recovery for the Class. In light of the obstacles to recovery, and the substantial time and expense that continued litigation would require, the Settlement is a very good result for the Class.

- 2 -

Indeed, the $388 million recovery is the best recovery ever obtained in a purchaser RMBS class action in terms of average recovery per dollar of initial face value of the securities at issue. As demonstrated in the following chart, the Settlement affords investors a ***20% premium*** over what investors received in the next-best RMBS class action settlement:

| Case | Total Settlement | Average Recovery per Dollar of Initial Face Value | Settlement Premium vs. Other Recoveries |
|------|-----------------|---------------------------------------------------|------------------------------------------|
| *1. JP Morgan II* | *$388,000,000* | *$38.77 per $1,000* | -- |
| 2. RALI | $335,000,000 | $32.32 per $1,000 | 20% |
| 3. Goldman Sachs I | $26,600,000 | $30.52 per $1,000 | 27% |
| 4. CWALT | $500,000,000 | $24.96 per $1,000 | 55% |
| 5. Goldman Sachs II | $272,000,000 | $24.90 per $1,000 | 56% |
| 6. Nomura | $21,200,000 | $18.92 per $1,000 | 105% |
| 7. Bear Stearns | $500,000,000 | $18.89 per $1,000 | 105% |
| 8. Harborview (RBS) | $275,000,000 | $16.73 per $1,000 | 132% |
| 9. Merrill Lynch | $315,000,000 | $15.57 per $1,000 | 149% |
| 10. IndyMac | $340,000,000 | $14.42 per $1,000 | 169% |
| 11. Citi | $24,975,000 | $13.25 per $1,000 | 193% |
| 12. Deutsche | $32,500,000 | $12.80 per $1,000 | 203% |
| 13. Thornburg | $11,250,000 | $12.10 per $1,000 | 220% |
| 14. JP Morgan I | $280,000,000 | $11.95 per $1,000 | 224% |
| 15. WaMu | $26,000,000 | $10.66 per $1,000 | 264% |
| 16. Wells Fargo | $125,000,000 | $2.70 per $1,000 | 1,336% |
| 17. Morgan Stanley | $95,000,000 | $2.63 per $1,000 | 1,374% |
| 18. Lehman | $40,000,000 | $0.37 per $1,000 | 10,378% |

In fact, the recovery afforded by the Settlement is nearly ***two-and-a-half times greater*** than the average recovery per dollar of initial face value recovered in all other comparable RMBS class actions. *See* Memorandum of Law in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Plaintiffs' Expenses Pursuant to 15 U.S.C. §77z-1(a)(4), at 19, filed concurrently herewith. Notably, after considering the foregoing risks and proposed settlement amount, Plaintiffs agreed that the Settlement provides a fair, reasonable, and adequate resolution of the claims against Defendants. *See, e.g.*, Declaration of Robert Glaza ("SoCal Laborers Decl."), ¶6,

and Declaration of Edward Smith ("NorCal Laborers Decl."), ¶7, attached as Exhibits 1 and 2, respectively, to the Lead Counsel Declaration.

Plaintiffs also request that the Court approve the Plan of Allocation of the Net Settlement Fund. This Plan of Allocation will govern how Class Members' claims will be calculated and, ultimately, how money will be distributed to valid claimants. The Plan of Allocation was developed with the assistance of Plaintiffs' economic consultant and is based on the methodology for calculating damages set forth in §11(e) of the Securities Act. *See* Declaration of Brett Brandenberg in Support of Plan of Allocation ("Brandenberg Decl."), attached as Exhibit 3 to the Lead Counsel Declaration. It is substantively the same as plans that have been approved and successfully used to allocate recoveries in other RMBS class actions. The Plan of Allocation is fair, reasonable, and adequate and should be approved.

## II. PROCEDURAL AND FACTUAL BACKGROUND OF THE SETTLEMENT

The terms of the Settlement are set forth in the Stipulation dated July 17, 2015. *See* Dkt. No. 361. In the Court's Order Preliminarily Approving Settlement and Providing for Notice, entered August 4, 2015 (Dkt. No. 362, the "Preliminary Approval Order"), the Court preliminarily approved the Settlement and directed that notice of the Settlement be provided to potential Class Members. Defendants deposited the $388 million Settlement Amount into an escrow account on August 13, 2015, and since then the amount has been earning interest for the benefit of the Class. The Preliminary Approval Order directed that a hearing be held on December 4, 2015 to determine the fairness, reasonableness, and adequacy of the Settlement. In accordance with the Preliminary Approval Order, on August 18, 2015, the Claims Administrator began mailing the Notice of Pendency of Class Action and Proposed Settlement and Settlement Hearing (the "Notice") to potential Class Members. As of September 21, 2015, the Notice had been mailed to over 9,200

- 4 -

potential Class Members and nominees.  *See* Declaration of Carole K. Sylvester Re (A) Mailing of

the Notice of Pendency of Class Action and Proposed Settlement and Settlement Hearing, the Proof

of Claim and Release Form, and the Schedule of Exchanged Certificates, (B) Publication of the

Summary Notice, (C) Internet Posting, and (D) Requests for Exclusion Received to Date ("Sylvester

Decl."), ¶10, attached as Exhibit 4 to the Lead Counsel Declaration.

Further, the Notice, the Proof of Claim and Release Form ("Proof of Claim"), the Schedule

of Exchanged Certificates, the Tables to the Plan of Allocation, the Stipulation and its Exhibits, and

the Preliminary Approval Order were posted on a website created by the Claims Administrator

(www.JPMorganRMBSlitigation.com), and pursuant to the Preliminary Approval Order, a Summary

Notice was published in *Investor's Business Daily* and transmitted over the *PR Newswire* on

August 28, 2015.  *See* Sylvester Decl., ¶¶12-13.

The Court is respectfully referred to the accompanying Lead Counsel Declaration for a full

discussion of the factual background and procedural history of the Action, the extensive litigation efforts

of Lead Counsel, a discussion of the negotiations leading up to the Settlement, and the reasons why the

Settlement and Plan of Allocation are fair, reasonable, and adequate, and should be granted.

## III.     THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A.     Settlements Are Favored and Encouraged

The court may approve a "class action settlement if it is 'fair, adequate, and reasonable, and

not a product of collusion.'"  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir.

2005).[2]  The evaluation of a proposed settlement requires the court to consider "both the settlement's

terms and the negotiating process leading to settlement."  *Id.*  While the decision to grant or deny

---

[2]     Citations are omitted throughout, unless otherwise indicated.

approval of a settlement lies within the broad discretion of the trial court, a general policy favoring

settlement exists, especially with respect to class actions. *Id.* (noting "'strong judicial policy in favor

of settlements, particularly in the class action context'"). Moreover, "[c]lass action suits readily lend

themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and

the typical length of the litigation." *In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310

(E.D.N.Y. 2006); *see also Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) ("There are

weighty justifications, such as the reduction of litigation and related expenses, for the general policy

favoring the settlement of litigation.").

Recognizing that a settlement represents an exercise of judgment by the negotiating parties,

the Second Circuit has cautioned that, while a court should not give "rubber stamp approval" to a

proposed settlement, it should "stop short of the detailed and thorough investigation that it would

undertake if it were actually trying the case." *Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir.

1974). As stated by the Second Circuit in *Newman v. Stein*, 464 F.2d 689 (2d Cir. 1972),

> the role of a court in passing upon the propriety of the settlement of a derivative or
> other class action is a delicate one. . . . [W]e recognized that since "'the very
> purpose of a compromise is to avoid the trial of sharply disputed issues and to
> dispense with wasteful litigation,' the court must not turn the settlement hearing 'into
> a trial or a rehearsal of the trial.'"

*Id.* at 691-92; *see also Chavarria v. N.Y. Airport Serv., LLC*, 875 F. Supp. 2d 164, 172 (E.D.N.Y.

2012) (a court should not "conduct a mini-trial of the merits of the action").

## B.     The Settlement Is Presumptively Fair

A "'presumption of fairness, adequacy, and reasonableness may attach to a class settlement

reached in arm's-length negotiations between experienced, capable counsel after meaningful

discovery.'"   *Wal-Mart*, 396 F.3d at 116.   In addition, great weight is accorded to the

recommendations of counsel, who are most closely acquainted with the facts of the underlying

litigation. *Luxottica Grp.*, 233 F.R.D. at 315; *see also In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y.) ("So long as the integrity of the arm's length negotiation process is preserved . . . a strong initial presumption of fairness attaches to the proposed settlement."), *aff'd*, 117 F.3d 721 (2d Cir. 1997). A court may find the negotiating process is fair where, as here, "the settlement resulted from 'arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests.'" *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).

This initial presumption of fairness and adequacy applies in this case because the Settlement was reached based on a fully-developed factual record with the benefit of full, completed fact discovery and expert analysis. It was also reached by experienced, fully-informed counsel after arm's-length negotiations with the assistance of a highly experienced mediator, the Honorable Daniel H. Weinstein (Ret.). Lead Counsel Decl., ¶¶106-107. In preparation for the mediation, the parties prepared detailed mediation statements outlining their evidence and arguments. *Id.*, ¶107. In addition, Lead Counsel unquestionably understood the merits and weaknesses of the case at the time the Settlement was reached, as Lead Counsel had negotiated for and received nearly 80 million pages of documents and taken or defended 42 depositions – more pages produced and depositions taken than in any other RMBS class action. Lead Counsel had also engaged experts and consultants who analyzed issues related to electronic discovery, class certification, statistics, materiality, mortgage loan re-underwriting, and mortgage loan due diligence. *Id.*, ¶¶79-95. Thus, this Settlement is entitled to the presumption of procedural fairness under Second Circuit law.

### C. The Settlement Meets the Second Circuit Requirements for Approval

The Second Circuit has identified nine factors that courts should consider to determine whether to approve a proposed settlement of a class action:

(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463. All nine factors need not be satisfied. Rather, the Court should look at the totality of these factors in light of the specific circumstances involved. *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004).

As demonstrated below and in the Lead Counsel Declaration, the Settlement meets each of the *Grinnell* factors. As such, the Settlement warrants this Court's final approval.

### 1. The Complexity, Expense, and Likely Duration of the Litigation Justifies the Settlement

Courts have long recognized that the expense and possible duration of the litigation should be considered in evaluating the reasonableness of a settlement. *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984). Securities class actions are notoriously complex, difficult, and expensive to prosecute. As a result, there is no guarantee that the outcome will favor class members. *See In re IMAX Sec. Litig.*, 283 F.R.D. 178, 189 (S.D.N.Y. 2012) (holding that securities class action litigation is "'notably difficult and notoriously uncertain'"); *Strougo v. Bassini*, 258 F. Supp. 2d 254, 258 (S.D.N.Y. 2003) (noting that continued litigation in a securities case would be complex, lengthy and expensive, with no guarantee of recovery by the class members). Here, the Action was complex, expensive and, even if Plaintiffs prevailed at summary judgment and at trial, likely to go on for many years.

There can be no question that this was a complex case. The initial complaint, which stated claims arising from the sale of structured investments created by players in the complicated RMBS industry, was filed in 2009, when the RMBS litigation landscape was largely undeveloped. Plaintiffs

then faced two rounds of motions to dismiss, wherein Defendants attempted to dismiss the Action based on novel standing arguments, among others. Lead Counsel Decl., ¶¶3, 120. Following the Second Circuit's decision in *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012), Plaintiffs moved to reinstate offerings that had been dismissed previously. Lead Counsel Decl., ¶34. Plaintiffs' motion was successful, resulting in the reinstatement of claims of hundreds of investors that would have otherwise been excluded from recovery in the Action. *Id.*, ¶38.

After consulting with experts, examining relevant class certification jurisprudence, and litigating Defendants' *Daubert* challenge to Plaintiffs' expert, Plaintiffs also obtained an unprecedented class certification order that certified a broadly-defined plaintiff class. *Id.*, ¶45. Thereafter, Plaintiffs devoted substantial time and resources to preparing the Action for trial. Specifically, Plaintiffs: (i) fought for and obtained approximately 80 million pages of complex structured finance documents – more pages of documents than in any other RMBS class action; (ii) reviewed and analyzed the production; (iii) took or defended 42 depositions – more than in any other RMBS class action; and (iv) engaged experts to opine on complicated issues such as negative causation, falsity, materiality, damages, mortgage loan underwriting, and statistics. *Id.*, ¶120. Significantly, the Action arose out of the complex process of purchasing mortgage loan pools and securitizing those loans into RMBS, which required Plaintiffs to learn and understand difficult structured finance processes and terminology. *Id.*, ¶54. At trial, Plaintiffs would have needed to explain to jurors, among other things, the various stages of Defendants' RMBS securitization operation, including the whole loan purchase process and the due diligence performed on loans to verify they were underwritten in accordance with applicable underwriting guidelines. The relatively nascent state of RMBS litigation during the pendency of the Action made Plaintiffs' undertaking even more novel, complex, and uncertain.

- 9 -

Given the subject matter, the factual and legal issues in this case were necessarily complicated. As a result, Plaintiffs and Defendants engaged experts and consultants to assist them in analyzing various factual issues. For example, Plaintiffs engaged a mortgage loan re-underwriting expert to assist in analyzing the massive number of loans underlying the Offerings. Lead Counsel Decl., ¶¶86-89. Plaintiffs also engaged a statistical expert to ensure that the re-underwriting analyses undertaken could be validly extrapolated across the entire loan pools at issue and an industry expert to examine whether Defendants' due diligence efforts were reasonable and could establish their due diligence defense. *Id.*, ¶¶90-91.[3] Moreover, there are numerous legal issues – falsity, materiality, rebutting negative causation, and establishing damages – that would have required expert testimony from both sides. *Id.*, ¶120. Indeed, the parties had already exchanged statistical expert reports and were well underway in completing the remaining expert reports, which, absent the Settlement, would have been due on July 31, 2015. *See* Dkt. No. 356. The issues on which expert testimony was required were challenging and would have unquestionably added complexity and length to the Action.

Similarly, there is no question that this case was expensive to litigate and would have resulted in an even higher expenditure of money, time, and judicial resources had it not settled. Lead Counsel have invested approximately $15 million in attorney and paraprofessional time and in excess of $3.8 million in expenses and in-house charges. Plaintiffs would have spent millions more on expert testimony, consultants, and other costs at trial. Assuming Plaintiffs won at trial, the Class would have incurred additional millions in fees and costs for what would have been a hotly-

---

[3]   As explained in more detail in the Lead Counsel Declaration, expert statistical analyses and mortgage loan re-underwriting were necessary to prove that statistically significant samples of loans underlying the Offerings failed to comply with applicable underwriting guidelines, thereby confirming the falsity of Defendants' representations in the offering documents. *See* Lead Counsel Decl., ¶¶83-89.

contested appeal and, assuming a judgment for Plaintiffs stood, a post-trial claims process. Defendants would have incurred similar charges.

Finally, the likely duration of the case also weighs in favor of approving the Settlement. This case was litigated for six years with no end in sight, especially if Plaintiffs won at trial. There would have been post-trial motions, a lengthy claims process, and ultimately an appeal. It would have been years before finality was obtained. The $388,000,000 Settlement at this juncture results in an immediate and substantial recovery for the Class, without the considerable risk, expense and delay of expert discovery, further motion practice, trial, and subsequent appeal. *See Strougo*, 258 F. Supp. 2d at 261 ("even if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery"); *Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs [and] justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action."). Therefore, Plaintiffs submit that this factor weighs heavily in favor of the proposed Settlement.

## 2.    The Reaction of the Class to the Settlement

The reaction of the class to the settlement is a significant factor in assessing its fairness and adequacy, and "'the absence of objectants may itself be taken as evidencing the fairness of a settlement.'" *PaineWebber*, 171 F.R.D. at 126; *see also Luxottica Grp.*, 233 F.R.D. at 311-12. Notices describing the nature of the Action and the terms of the Settlement were distributed to 9,249 potential Class Members and/or their nominees. Sylvester Decl., ¶10. In addition, a Summary Notice was published in the national edition of *Investor's Business Daily* and over the *PR Newswire* on August 28, 2015. *Id.*, ¶13. As of the date this motion was filed, no objections to the Settlement

- 11 -

have been received and no institutional investors have opted out of the proposed Settlement.[4]  Thus, the reaction of the Class – those affected by the Settlement – underscores the propriety of the Settlement and militates in favor of granting approval.

### 3.     The Stage of the Proceedings and Discovery Completed

"There is no precise formula for what constitutes sufficient evidence to enable the court to analyze intelligently the contested questions of fact.  It is clear that the court need not possess evidence to decide the merits of the issue, because the compromise is proposed in order to avoid further litigation. . . .  At minimum, the court must possess sufficient information to raise its decision above mere conjecture."  4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* §11.45, at 127, 128 (4th ed. 2002).  Courts have approved settlements reached even before the parties engage in formal discovery.  *See Global Crossing*, 225 F.R.D. at 458 ("[f]ormal discovery is not a prerequisite; the question is whether the parties had adequate information about their claims"); *D'Amato*, 236 F.3d at 87 (affirming district court's approval of settlement and holding that "the 'stage of proceedings' factor also weighed in favor of settlement" despite the fact that "no formal discovery had taken place" because there had been an extensive exchange of documents and other information).  In stark contrast, fact discovery in this case was complete, expert discovery was nearly complete, and the parties were prepared to litigate summary judgment and go to trial.

Lead Counsel negotiated the Settlement only after they had a clear view of the strengths and weaknesses of the parties' claims and defenses.  This was not a case that settled early; rather, it settled after more than five years of litigation.  At the time the Settlement was reached, Lead Counsel had: (i) successfully opposed Defendants' two comprehensive motions to dismiss; (ii) obtained class certification

---

[4]    The Court-ordered deadline set for objections is October 7, 2015.  Accordingly, if Lead Counsel receive any objections to the Settlement or Plan of Allocation, they will be addressed in Plaintiffs' reply brief scheduled to be filed on October 22, 2015.

over Defendants' aggressive opposition; (iii) conducted extensive document discovery; (iv) took or defended the depositions of 42 fact and expert witnesses; (v) responded to discovery propounded by Defendants, including document requests and deposition notices; (vi) filed numerous complex discovery-related motions, most of which were decided by Magistrate Judge Francis after being fully briefed and argued; and (vii) nearly completed expert discovery.  Lead Counsel Decl., ¶¶62-73.

Thus, this Action had advanced to a stage where the parties certainly "'have a clear view of the strengths and weaknesses of their cases.'"  *Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, No. 01-CV-11814 (MP), 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004); *see also In re Giant Interactive Grp., Inc.*, 279 F.R.D. 151, 161 (S.D.N.Y. 2011) (this factor supported settlement where the action had proceeded through substantial document production, five depositions, "a round of mediation submissions and sessions, and expert consultations on damages and causation," and, thus, "the parties were able to make an intelligent appraisal of the value of the case").  Therefore, the Court should find that this factor further supports approval of the Settlement.

### 4.    The Risks of Establishing Liability and Damages

In assessing the Settlement, the Court should balance the benefits afforded the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation.  *See Grinnell*, 495 F.2d at 463; *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 0165 (CM), 2007 WL 4115809, at *8 (S.D.N.Y. Nov. 7, 2007); *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 177 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).  While Plaintiffs believe they would have prevailed at trial, they recognize that ultimate success is not assured, and further believe that this substantial Settlement, when viewed in light of the risks of proving liability, is fair, adequate, and reasonable.  *See In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993) (when evaluating securities class action settlements,

- 13 -

courts have long recognized such litigation to be "'notably difficult and notoriously uncertain'") (quoting *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973)); *IMAX*, 283 F.R.D. at 189 (same).

The risks here included challenges in proving that there were misstatements and omissions in the offering documents, all of which contained detailed risk disclosures that Defendants argued shielded them from liability.  Further risks included, for example, overcoming Defendants' arguments that some or all of the declines in the value of the Certificates were due to causes other than the alleged misstatements or omissions ("negative causation" defenses); that Defendants had conducted a "reasonable investigation" and thus could satisfy their "due diligence" defense; and that various Members of the Class had actual knowledge of the misstatements and thus could not bring valid claims.  Lead Counsel Decl., ¶¶101-103.

*Risks of Establishing Liability*.  To avoid summary judgment and prevail at trial, Plaintiffs would need to present evidence that the offering documents contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein related to (1) the underwriting of the loans underlying the Offerings, and/or (2) the appraisals and loan-to-value ratios of the loans underlying the Offerings.  Defendants have argued and would continue to argue that the offering documents contained no untrue statements or omissions.

*Risks of Establishing Damages*.  Defendants also contended that establishing damages under the Securities Act posed significant obstacles for Plaintiffs and the Class.  Thus, even assuming that Plaintiffs prevailed at trial in establishing untrue statements and omissions in the offering documents for the nine Offerings, Plaintiffs would still need to establish recoverable damages under §11 of the Securities Act.[5]

---

[5]   Under §11, damages are based on "the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and (1) the value thereof as of the time such suit was brought, or (2) the price at which such security shall have been disposed of in

- 14 -

Lead Counsel engaged a consultant to assist in estimating potentially recoverable damages using the statutory measure under §11 and believed those damages could be proven at trial and sustained on appeal. Lead Counsel Decl., ¶¶102, 120. However, damages under §11 may be reduced or eliminated if the defendant proves that a portion or all of the statutory damages are attributable to causes other than the misstatements or omissions. *See* 15 U.S.C. §77k(e). Throughout the course of the litigation, Defendants contended that any losses were caused by factors other than untrue statements in the offering documents, such as the overall economic downturn and general decline in housing prices, and they would have had additional opportunities to persuade the Court or a jury that their position was meritorious. Moreover, because the timing of the price declines at issue coincided with the national economic downturn, Defendants' "negative causation" defense was an argument that, at the very least, would have to be resolved through expert testimony at trial. *See, e.g.*, *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 174 (2d Cir. 2005) (the likelihood of demonstrating loss causation decreases if a "plaintiff's loss coincides with a marketwide phenomenon"); *Giant Interactive*, 279 F.R.D. at 161-62 (approving settlement where the litigation risks included a "credible defense of 'negative causation'"). All of these arguments created risk to Plaintiffs' ability to establish damages.

**Risks Related to Other Defenses**. Defendants raised numerous other defenses in this Action, which they could be expected to continue to press, including, *inter alia*, (1) a "due diligence" defense; and (2) that certain Class Members had "knowledge" of the alleged misstatements:

- **Due Diligence**. Defendants asserted a "due diligence" defense and contended that they conducted appropriate reviews and analyses of the character and quality of loans

the market before suit, or (3) the price at which such security shall have been disposed of after suit but before judgment if such damages shall be less than the damages representing the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and the value thereof as of the time such suit was brought." 15 U.S.C. §77k(e).

- 15 -

prior to the loans being securitized in the Offerings.  Lead Counsel Decl., ¶101. While Defendants would have the burden of establishing this "due diligence" defense, if they were successful in establishing the reasonableness of their investigation, it could provide a complete defense to liability.  Moreover, the question as to what constituted a "reasonable investigation" in these circumstances would likely have been the subject of competing expert testimony at trial.  *See, e.g.*, *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 338 (S.D.N.Y. 2005) (risks of litigation supported the settlement where defendants "had asserted due diligence defenses and might have been successful at establishing the adequacy of their efforts at trial").

- ● ***Knowledge***.  Defendants would argue that certain Plaintiffs and various Members of the Class had actual knowledge of the alleged untrue statements and omissions at the time they purchased the Certificates and thus could not bring claims.  Lead Counsel Decl., ¶103.

These contested issues would ultimately have required expert testimony.  While Plaintiffs expected to present persuasive expert testimony, Defendants likely would also have been able to present experts who supported their position.  Defendants, moreover, undoubtedly would assert *Daubert* challenges against each of Plaintiffs' experts.  Even assuming that Plaintiffs prevailed in such challenges, Plaintiffs could not be certain which experts' views would be credited by the jury and who would prevail at trial in this "battle of the experts."[6]

### 5.    The Risks of Maintaining the Class Action Through Trial

The Court certified the Class on September 30, 2014, over Defendants' opposition. Nevertheless, a court may exercise its discretion to re-evaluate the appropriateness of class certification at any time.  *See Chatelain v. Prudential-Bache Sec.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992) ("Even if certified, the class would face the risk of decertification.").  Notably, in its September 30, 2014 certification order, the Court found that "more specificity" as to how Class-wide

---

[6]    *See, e.g.*, *In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 332 (E.D.N.Y. 2010) ("The proof on many disputed issues – which involve complex financial concepts – would likely have included a battle of experts, leaving the trier of fact with difficult questions to resolve."); *In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 426-27 (S.D.N.Y. 2001) ("In such a battle, Plaintiffs' Counsel recognize the possibility that a jury could be swayed by experts for Defendants.").

damages would be calculated was required. *See* Dkt. No. 318 at 38. Although the Plan of Allocation provides the specificity required by describing precisely how each Class Member's claim will be calculated using the information called for by the Proof of Claim – *i.e.*, (i) when the Class Member's Certificates were purchased or acquired and the price at the time of purchase; (ii) whether the Certificates were sold, and if so, when they were sold and for how much; and (iii) if held by the Class Member on the applicable date of suit for that Certificate, the value of the Certificate on that date – absent a settlement, uncertainty would remain. Here, the Settlement leaves no doubt with respect to this issue. And, in any event, the fact that the Class was already certified should not have any effect on the Court's decision to approve the Settlement. *Veeco*, 2007 WL 4115809, at *10.

> **6.    The Ability of the Defendants to Withstand a Greater Judgment**

The ability of a defendant to pay a judgment greater than the amount offered in a settlement can be relevant to whether a settlement is fair. *Grinnell*, 495 F.2d at 463. The fact, however, that a defendant is able to pay more than it offers in settlement, does not, standing alone, indicate that the settlement is unreasonable or inadequate. *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004) ("[T]he fact that DuPont could afford to pay more does not mean that it is obligated to pay any more than what the . . . class members are entitled to under the theories of liability that existed at the time the settlement was reached."); *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173 (RPP), 2008 WL 1956267, at *8 (S.D.N.Y. May 1, 2008) ("a defendant is not required to 'empty its coffers' before a settlement can be found adequate"); *In re Wachovia Equity Sec. Litig.*, No. 08 Civ. 6171(RJS), 2012 WL 2774969, at *5 (S.D.N.Y. June 12, 2012) (same).

While it is apparent that J.P. Morgan has sufficient resources to pay a sum larger than the Settlement Amount, as a practical matter the prospects of recovering a substantially greater sum

would have been offset by the risks, costs, and delay of the inevitable post-trial motions and appeals Defendants would pursue following any judgment.  Additionally, settlement eliminates any risk of collection.  In fact, the Settlement Amount is already earning interest for the Class.

**7.     The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation**

The last two factors are satisfied here.  The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case."  *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).  The Court need only determine whether the Settlement falls within a "'range of reasonableness.'" *PaineWebber*, 171 F.R.D. at 130; *Newman*, 464 F.2d at 693 ("[I]n any case there is a range of reasonableness with respect to a settlement."); *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993) (The determination of a reasonable settlement "'is not susceptible of a mathematical equation yielding a particularized sum,' but turns on whether the settlement falls within 'a range of reasonableness.'") (citing *Newman*, 464 F.2d at 693).  In addition, in considering the reasonableness of the Settlement, the Court should consider that the Settlement provides for payment to the Class now, rather than a speculative payment many years down the road.  *See In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. MDL 1500, 2006 WL 903236, at *13 (S.D.N.Y. Apr. 6, 2006) (where settlement fund is in escrow and earning interest for the class, "the benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery").

There are numerous risks involved in litigation – especially litigation that involves the complex issues inherent in securities class actions.  In light of the difficult legal and factual issues typically present in securities class actions, the unpredictability of expert discovery, summary judgment, a lengthy and complex trial, and the appellate process that would inevitably follow, the

- 18 -

fairness of a substantial settlement is clearly apparent.  Here, the Settlement of $388,000,000 in cash represents an excellent recovery for the Class, given the risks of proceeding further in this matter.  In fact, as described above, the Settlement represents, on a recovery per $1,000 of initial certificate value, the ***largest recovery ever achieved*** in an RMBS purchaser class action.

The recommendation of Plaintiffs – institutional investor pension funds overseeing billions of dollars of pension benefits for thousands of construction industry employees – further supports the fairness of the Settlement.  Representatives of Plaintiffs took an active role in supervising and participating in this litigation, as envisioned by the PSLRA, and believe the Settlement "represents an outstanding recovery that would not have been possible without the diligent efforts of Lead Counsel."  SoCal Laborers Decl., ¶6; NorCal Laborers Decl., ¶7.  A settlement, such as this one, reached "under the supervision and with the endorsement of a sophisticated institutional investor . . . is 'entitled to an even greater presumption of reasonableness.'"  *Veeco*, 2007 WL 4115809, at *5.

Considering the risk that the Class might not have been able to succeed on liability, the possibility that damages awarded by a jury could have been lower than those demanded by the Class (or no recovery at all), and, assuming Plaintiffs prevailed at trial, the delays and further risks raised by the appellate process, this Settlement is an excellent recovery.

In sum, the *Grinnell* factors, individually and collectively, weigh strongly in favor of the Settlement being approved.

## IV.   THE NOTICE OF PROPOSED SETTLEMENT SATISFIES DUE PROCESS REQUIREMENTS AND IS REASONABLE

Rule 23(c)(2) requires the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974) (class notice is designed to fulfill due process requirements).  The standard for measuring the adequacy of a class action

- 19 -

settlement notice is reasonableness.  *Wal-Mart*, 396 F.3d at 114.  "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Id.*  "Notice is 'adequate if it may be understood by the average class member.'" *Id.*

Here, in accordance with the Court's Preliminary Approval Order, starting on August 18, 2015, the Claims Administrator caused the Notice, Proof of Claim, and the Schedule of Exchanged Certificates, as approved by the Court, to be mailed by first class mail to potential Class Members. Sylvester Decl., ¶3.  The Notice contains a description of the Settlement, the Plan of Allocation, and Class Members' rights to participate in and object to the Settlement, or to exclude themselves from the Class.  *Id.*, Exhibit A.  On August 28, 2015, the approved Summary Notice was published in *Investor's Business Daily* and transmitted over the *PR Newswire*.  *Id.*, ¶13.  Information regarding the Settlement, including downloadable copies of the Notice, Proof of Claim, Schedule of Exchanged Certificates, the Tables to the Plan of Allocation, was also posted on a website created by the Claims Administrator for the case (www.JPMorganRMBSlitigation.com).  *Id.*, ¶12.

The notice program, which combined an individual, mailed Notice and Proof of Claim packet to all potential Class Members who could be reasonably identified, as well as to custodian holders, and a Summary Notice published in one of the pre-eminent national business publications and over the internet, contained all of the information required by the PSLRA, and is adequate to meet the due process and Rule 23(c)(2) and (e) requirements for providing notice to the Class.

## V.     THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

If the Court approves the proposed Settlement, upon completion of the claims filing process, the Net Settlement Fund will be distributed to Members of the Class according to the Plan of

Allocation set forth in the Notice. "[T]he adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information." *PaineWebber*, 171 F.R.D. at 133; *Luxottica Grp.*, 233 F.R.D. at 316-17. As with the Settlement, the opinion of experienced and informed counsel carries considerable weight. *Am. Bank Note*, 127 F. Supp. 2d at 430. District courts enjoy "broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members . . . equitably." *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978).

The Plan of Allocation, which was fully described in the Notice, has a rational basis and was formulated by Lead Counsel in consultation with their damages consultant, ensuring its fairness and reliability. *See Veeco*, 2007 WL 4115809, at *13. Under the proposed Plan of Allocation, each Authorized Claimant (as defined in ¶20(b) of the Stipulation) will receive a *pro rata* share of the Net Settlement Fund, with that share to be determined by the ratio that the Authorized Claimant's allowed claim bears to the total allowed claims of all Authorized Claimants. *See* Brandenberg Decl., attached as Exhibit 3 to Lead Counsel Declaration.

The Plan of Allocation, as set forth in the Notice, allocates the Settlement proceeds based principally on the statutory measure of damages set out in §11(e) of the Securities Act, 15 U.S.C. §77k(e). Plaintiffs engaged Brett Brandenberg, a Director at AlixPartners, LLP and a Chartered Financial Analyst, to examine the Plan of Allocation. The Brandenberg Declaration explains the methodology for determining each Authorized Claimant's Recognized Claim under the Plan of Allocation and the basis for the analysis. As explained more fully in the Notice – including through illustrative examples – and in the Brandenberg Declaration, a "Recognized Loss Amount" or "Recognized Gain Amount" will be calculated for each purchase or acquisition of a Certificate. Brandenberg Decl., ¶7. The calculation of a Claimant's Net Recognized Loss will depend on several

factors, including: (a) the face value of the Certificates purchased; (b) when the Certificates were purchased or acquired and the price paid; (c) any principal payments received; (d) whether the Certificates were sold, and if so, when they were sold and for how much; and (e) if held on the applicable Date of Suit for the Certificates, the price of the Certificates on that date. *Id.*, ¶6.

Although the formula has a degree of complexity necessary to allocate the Net Settlement Fund fairly among Authorized Claimants, investors in mortgage-backed securities are typically familiar with the language utilized in the Plan of Allocation because it is consistent with industry terminology. *Id.*, ¶7. In addition, specific examples of how to calculate hypothetical examples under various scenarios are included in the Plan of Allocation for clarification. A similar approach has been accepted and used successfully in other RMBS class action settlements.[7]

As noted above, the proposed Plan of Allocation in this case is based on the statutory damages permitted under §11 of the Securities Act and was fully explained in the Notice sent to Class Members. It was prepared with the experience and advice of Plaintiffs' consultant and tracks the theory of damages asserted by Plaintiffs. Accordingly, the Plan of Allocation is fair and reasonable to the Class as a whole. Lead Counsel Decl., ¶112. The Plan of Allocation is supported by the Brandenberg Declaration and should be approved by the Court. To date, no objections to the Plan of Allocation have been made. *Id. See Veeco*, 2007 WL 4115809, at *14; *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002).

---

[7]   *See, e.g., In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*, No. 09-cv-2137-KBF (S.D.N.Y.); *Plumbers' & Pipefitters' Local #562 Supplemental Plan & Trust v. J.P. Morgan Acceptance Corp.*, No. 08-cv-1713 (PKC) (E.D.N.Y.); *Pub. Emps. Ret. Sys. of Miss. v. Goldman Sachs Grp., Inc.*, No. 09-cv-1110-HB (S.D.N.Y.); *Pub. Emps. Ret. Sys. of Miss. v. Merrill Lynch & Co. Inc.*, No. 08-cv-10841-JSR (S.D.N.Y.); *In re Wells Fargo Mortg.-Backed Certificates Litig.*, No. 09-cv-1376-LHK (N.D. Cal.).

## VI.    CONCLUSION

The $388,000,000 Settlement reached in this Action is an excellent result that provides an

immediate and substantial benefit for the Class.  For the reasons set forth herein and in the Lead

Counsel Declaration, Plaintiffs and Lead Counsel respectfully submit that the Settlement and Plan of

Allocation are fair, reasonable, and adequate, and respectfully request the Court grant approval of the

Settlement and Plan of Allocation.

DATED:  September 22, 2015                Respectfully submitted,

                                          ROBBINS GELLER RUDMAN
                                            & DOWD LLP
                                          DANIEL S. DROSMAN
                                          LUKE O. BROOKS
                                          LUCAS F. OLTS
                                          NATHAN R. LINDELL
                                          DARRYL J. ALVARADO
                                          ANGEL P. LAU
                                          HILLARY B. STAKEM


                                                    s/ Luke O. Brooks
                                          _____
                                               LUKE O. BROOKS

                                          655 West Broadway, Suite 1900
                                          San Diego, CA  92101
                                          Telephone:  619/231-1058
                                          619/231-7423 (fax)

                                          Lead Counsel for Plaintiff

- 23 -

CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2015, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on September 22, 2015.

s/ Luke O. Brooks
LUKE O. BROOKS

ROBBINS GELLER RUDMAN
      & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail: LukeB@rgrdlaw.com

1073032_1

# Mailing Information for a Case 1:09-cv-03701-JPO-JCF

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Floyd Abrams**
  fabrams@cahill.com,mmcloughlin@cahill.com,managingattorney@cahill.com

- **Mario Alba , Jr**
  malba@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com,drosenfeld@rgrdlaw.com

- **Darryl J. Alvarado**
  dalvarado@rgrdlaw.com,nhorstman@rgrdlaw.com

- **Tina Gonzalez Barton**
  bartont@sullcrom.com,s&cmanagingclerk@sullcrom.com

- **David Lionel Breau**
  dbreau@Sidley.com,nyefiling@Sidley.com

- **Luke Orion Brooks**
  lukeb@rgrdlaw.com

- **Rebecca L. Butcher**
  butcher@lrclaw.com

- **Darrell Scott Cafasso**
  cafassod@sullcrom.com,s&cmanagingclerk@sullcrom.com

- **Jarrett Scott Charo**
  jcharo@rgrdlaw.com

- **James J. Coster**
  jcoster@ssbb.com,managingclerk@ssbb.com

- **Daniel S. Drosman**
  ddrosman@rgrdlaw.com,jillk@rgrdlaw.com,E_File_SD@rgrdlaw.com,tholindrake@rgrdlaw.com,kcook@rgrdlaw.com

- **Thomas Edward Egler**
  tome@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Andrew James Ehrlich**
  aehrlich@paulweiss.com

- **Martin Flumenbaum**
  mflumenbaum@paulweiss.com

- **Jonah H. Goldstein**
  jonahg@rgrdlaw.com

- **Joseph Peter Guglielmo**
  jguglielmo@scott-scott.com,edewan@scott-scott.com,tcrockett@scott-scott.com,ichilaia@scott-scott.com,efile@scott-scott.com,aslaughter@scott-scott.com

- **Geoffrey M. Johnson**
  gjohnson@scott-scott.com,edewan@scott-scott.com,efile@scott-scott.com

- **Roberta Ann Kaplan**
  rkaplan@paulweiss.com

- **Justin Evan Klein**
  jklein@ssbb.com,managingclerk@ssbb.com

- **Angel P. Lau**
  alau@rgrdlaw.com

- **Thomas Livezey Laughlin , IV**
  tlaughlin@scott-scott.com,sjacobsen@scott-scott.com,ichilaia@scott-scott.com,efile@scott-scott.com

- **Arthur C. Leahy**
  artl@rgrdlaw.com

- **Nathan R. Lindell**
  nlindell@rgrdlaw.com

- **Alison Leigh MacGregor**
  amacgregor@kelleydrye.com,docketing@kelleydrye.com

- **Daniel Allan McLaughlin**
  dmclaughlin@sidley.com,nyefiling@sidley.com

- **William Brian Monahan**
  monahanw@sullcrom.com,s&cmanagingclerk@sullcrom.com

- **Danny Cameron Moxley**
  cmoxley@sidley.com,nyefiling@sidley.com

- **Michael Patrick Murtagh**
  murtaghm@sullcrom.com,s&cmanagingclerk@sullcrom.com

- **Ivy T. Ngo**
  ingo@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Lucas F. Olts**
  lolts@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Thomas Andrew Paskowitz**
  tpaskowitz@sidley.com,nyefiling@sidley.com

- **Alfred Robert Pietrzak**
  rpietrzak@sidley.com,nyefiling@sidley.com

- **Theodore J. Pintar**
  tedp@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Caroline M Robert**
  crobert@rgrdlaw.com

- **Ashley M Robinson**
  ashleyr@rgrdlaw.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Tammy Lynn Roy**
  troy@cahill.com,ndelutri@cahill.com,mmcloughlin@cahill.com,nmarcantonio@cahill.com,managingattorney@cahill.com

- **Joshua M. Rubins**
  jrubins@ssbb.com

- **Samuel Howard Rudman**
  e_file_ny@rgrdlaw.com,mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Robert Andrew Sacks**
  sacksr@sullcrom.com,s&cmanagingclerk@sullcrom.com

- **Scott H. Saham**
  scotts@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Dorothy Jane Spenner**
  dspenner@sidley.com,nyefiling@sidley.com

- **Hillary B. Stakem**
  hstakem@rgrdlaw.com

- **Andrew W. Stern**
  astern@sidley.com,nyefiling@sidley.com

- **Tobias James Stern**
  tstern@paulweiss.com

- **Susan G. Taylor**
  susant@rgrdlaw.com

- **Carolina Cecilia Torres**
  ctorres@csgrr.com

- **Sarah Penny Windle**
  windls@cahill.com,managingattorney@cahill.com

- **Adam Nelson Zurofsky**
  azurofsky@cahill.com,MMcLoughlin@cahill.com,NMarcantonio@cahill.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)